MEDNIS, Appellant, v. INDUSTRIAL COMMISSION and others, Respondents.*

*April 1—April 27, 1965.*

---

* Motion for rehearing denied, without costs, on June 25, 1965.

For the appellant there were briefs and oral argument by *Bernard C. Westfahl* of Milwaukee.

For the respondent Industrial Commission the cause was argued by *James P. Altman,* assistant attorney general, with whom on the brief were *Bronson C. La Follette,* attorney general, and *Gordon Samuelsen,* assistant attorney general.

For the respondents North Side Lumber & Fuel Company and Globe Indemnity Company there was a brief by *Gibbs, Roper & Fifield,* and oral argument by *Robert J. Loots,* all of Milwaukee.

BEILFUSS, J.   The applicant appellant asserts that prior to the industrial injury of December 11, 1961, he had industrial usable vision in his left eye which was completely lost as a result of the injury, and that under the Workmen's Compensation Act he is entitled to full benefits.

Sec. 102.52, Stats., provides in part:

"PERMANENT PARTIAL DISABILITY SCHEDULE. In cases included in the following schedule of permanent partial disabilities indemnity shall be paid for the healing period, and in addition thereto, where the employe is 50 years of age or

less, for the period specified, at the rate of 70 per cent of the average weekly earnings of the employe, to be computed as provided in section 102.11:

"...

"(16) Total impairment of one eye for industrial use, 250 weeks."

Sec. 102.55, Stats., provides in part:

"APPLICATION OF SCHEDULES. . . .

"(3) . . . compensation shall bear such relation to that named in this schedule as disabilities bear to the disabilities named in this schedule. Indemnity in such cases shall be determined by allowing weekly indemnity during the healing period resulting from the injury and the percentage of permanent disability resulting thereafter as found by the commission."

The applicant contends that the language of sec. 102.52, Stats., is clear and unambiguous and leaves no room for an interpretation that denies full scheduled benefits.

As pointed out by the trial court in an able and helpful memorandum opinion, the award of the commission is consistent with the long-standing prior pronouncements of this court and the agency rules and directions construing the statute. The rule is that the applicant shall not be compensated for that portion of his disability which, clearly established, is due to a pre-existing industrial or nonindustrial disability.

The court, speaking through Mr. Justice EDWARD T. FAIRCHILD, in *Employers Mut. Life Ins. Co. v. Industrial Comm.* (1933), 212 Wis. 669, 670, 671, 250 N. W. 758, stated:

"The effect of a disease or infirmity existing before an accident occurs is to be separated from the effect of the later injury so far as that is possible in the administration of the workmen's compensation law. . . . Where the pre-existing condition is so thoroughly established and is of such

a serious nature that what happens thereafter cannot reasonably be held to be the result of a subsequent accident, no award would be allowed. There appears to be no questioning of the rule that no compensation is payable where a pre-existing condition causes the disability independent of any subsequent mishap." [1]

In *Ruehlow v. Industrial Comm.* (1933), 213 Wis. 240, 251 N. W. 451, plaintiff lost an eye at·age twelve, the result of a nonindustrial accident. At age forty he lost the vision of his other eye in an industrial mishap. He was allowed recovery for loss of the second eye. The issue was how much extra he was entitled to out of the special state fund. The court said, at pages 244, 245 :

"We do not think that the legislature intended that an employee, who has lost the vision of one eye as a result of a non-industrial accident and who subsequently loses the vision of the other eye as a result of an industrial accident, should be compensated as fully as an employee who has lost the vision of both eyes as a result of an industrial accident or accidents. It would hardly seem reasonable to conclude that the legislature intended by enacting said sub. (6) to compel industry to provide a state fund out of which an employee who had theretofore sustained a non-compensable non-industrial accidental loss of an eye followed by the loss of the other eye as the result of an industrial accident, should be as fully compensated as one losing both eyes as a result of an industrial accident or accidents. . . . We think the legislature did not intend that an employee should be compensated for a prior injury which had no connection with employment in industry beyond the cumulative effect resulting from the two injuries."

Pages 25 and 26 of the Workmen's Compensation Office Manual, used by the examiners of the Industrial Commission, and referred to by the trial court, provide as follows :

---

[1] *Giant Grip Mfg. Co. v. Industrial Comm.* (1956), 271 Wis. 583, 586, 587, 74 N. W. (2d) 182; *Kiesow v. Industrial Comm.* (1934), 214 Wis. 285, 287, 252 N. W. 604.

"Pre-existing Disabilities

"Scheduled disability with pre-existing scheduled disability.

"In case of a pre-existing industrial or non-industrial disability to an arm, leg, vision or hearing, the number of weeks of compensation payable for such injury, had it been industrial, shall be deducted from the number of weeks set forth in 102.52 before computing compensation payable to the same member or faculty, provided that the existence and extent of such disability can be established by the party seeking to make such deduction. Deduction is not made for a pre-existing disability more proximal to the injury. Even though the employe was paid compensation for a certain percentage of disability due to a previous injury, the extent of such pre-existing disability at the time of subsequent hearing may be redetermined (Kiesow vs. Industrial Comm., 214 Wis. 285)."

The construction and interpretation adopted by the administrative agency charged with the duty of applying the law is entitled to great weight in the courts.[2] Further, the construction of a statute by the court becomes a part of the statute unless the legislature subsequently amends the statute.[3]

From the record it has been clearly established that Mr. Mednis had a very substantial pre-existing nonindustrial disability of long standing. The undisputed fact is that prior to the present industrial accident he had only a four percent use of his left eye. The record further reveals that because of the condition of his eye prior to this accident he had a predisposition to a detached retina.

Dr. Schalmo, who performed the surgery for the detached retina, and was called as a witness by Mr. Mednis, testified that it "is common knowledge that a normal, healthy

[2] *Trczyniewski v. Milwaukee* (1961), 15 Wis. (2d) 236, 240, 112 N. W. (2d) 725; *Wisconsin Axle Division v. Industrial Comm.* (1953), 263 Wis. 529, 537b, 57 N. W. (2d) 696, 60 N. W. (2d) 383.
[3] *Borello v. Industrial Comm.* (1965), 26 Wis. (2d) 62, 131 N. W. (2d) 847.

eye is not subject to traumatic-type retinal detachments" but because of the prior injury, glaucoma, and cataract surgery, the eye had a predisposition to retinal detachment, and that trauma of the industrial accident could have contributed to this retinal detachment. The commission did not reduce his award because of this predisposition but allowed him full benefit for the portion of vision which he had before the industrial accident.

Before the industrial accident and injury, Mr. Mednis had very little use of his left eye industrially or otherwise. He had no usable central vision, no binocular vision, but some side vision. His effective vision was his corrected 20/20 vision in his right eye. He still has his right-eye vision unaffected by this industrial injury.

The findings and award of the commission, as confirmed by the trial court, are fully in accord with our prior construction of the statute and the agency's interpretation. They must be affirmed.

*By the Court.*—Judgment affirmed.

GORDON, J. (*concurring*). With the remaining four percent of vision in his left eye, Mr. Mednis appears to have had industrially usable vision therein. By reason of the industrial accident on December 11, 1961, his vision in his left eye is entirely gone. I find it unrealistic to say that this accident has cost Mr. Mednis only four percent of vision in his left eye and that he should be reimbursed for only four percent of the amount allowed for the loss of vision of an eye when such four percent represents the totality of sight in such eye.

Those four percentage points are patently far more valuable to him than the four points which might be lost by one with more-normal sight. In other words, to say that the loss of vision in an eye from four percent to zero is no different in value than a loss from 100 percent to 96 percent is not impressive to me.

My colleagues are quite mindful of this anomaly but feel bound by sec. 102.52 (16), Stats., and its interpretations. The law supports such position and forecloses dissent. Nevertheless, I am constrained to state that when a judgment leads to such a dubious result as this, a better and more-just solution should be available.

I am authorized to state that Mr. Justice WILKIE joins in this concurring opinion.