THE HONORABLE, THE ASSEMBLY Legislature
Pursuant to Assembly Resolution No. 51, you have requested my opinion whether a person extracting honey is subject to licensing as a food processor under sec. 97.28, Stats., or under any other provision. I have also received correspondence from individual assemblymen describing the problem in greater detail and informing me of a concern by licensees about the propriety of an increase in the license fee from $5.00 to $20.00 per year. *Page 270 
"The test of a reasonable [license] fee is that it shall be no greater than is sufficient to cover the expenses of administration." Meyers v. Matthews (1955), 270 Wis. 453, 460,71 N.W.2d 368, appeal dismissed, 350 U.S. 927, rehearing denied,350 U.S. 977. The license fee is used by the Department of Agriculture to cover the costs of issuing the license and of investigating the construction and sanitary conditions of the plant and equipment. Sec. 97.28 (5), Stats. The increase in minimum license fees from five dollars to twenty dollars was enacted by the legislature as part of the biennial budget bill. See sec. 574, ch. 39, Laws of 1975. In the absence of facts which would clearly establish a contrary conclusion twenty dollars does not appear to be a unreasonable charge for performance of these functions.
The next question is whether the removal of honey from honeycombs with a machine known as an "extractor" constitutes food processing within the purview of sec. 97.28, Stats.
Section 97.28 (1) requires an operator of a food processing plant to obtain a license from the Department of Agriculture. Section 97.28 (2), defines "food processing plant" as:
 ". . . any place where food is manufactured or prepared for sale through the process of canning, extracting, fermenting, distilling, pickling, freezing, drying, smoking, grinding, mixing, stuffing, packing, bottling, cutting and packaging, or otherwise treating or preserving the same for sale as and for food . . . ." (Emphasis added.)
As used in ch. 97, Stats., "food" means articles used for food or drink by man, including components of such articles. See sec.97.01 (2), Stats. According to the Wisconsin Administrative Code, "extracted honey" is:
 ". . . honey which has been separated from the crushed or uncrushed comb by centrifugal force, gravity, straining, or other means." Ag 91.01 (2), Wis. Adm. Code.
 Webster's Third New International Dictionary (unabridged) contains the following definition of "extract:"
 "1d: to separate or otherwise obtain (as constituent elements or juices) from a substance by treating with a solvent (as alcohol), distilling, evaporating, subjecting to pressure or centrifugal force, or by some other *Page 271 
chemical or mechanical process [-ing an essence] [-ing the juice of apples] [-ed honey]." (Emphasis added.)
One who separates or withdraws honey from honeycombs by mechanical or other means is an extractor of honey. Honey constitutes an article of food. Any place where this extraction occurs for the purpose of preparing the honey for sale is a "food processing plant" and would, within the statutory requirement, be subject to licensing.
It has been suggested that the term "extracting" as used in see. 97.28, Stats., refers to a more technical process or procedure in the food processing industry and, therefore, should not render a farmer subject to licensing solely because he harvests honey. Such a construction is in conflict with the Department of Agriculture's rule and the normal meaning of the words employed. Moreover, both extraction and sale of the honey at wholesale for public consumption triggers the licensing requirement.
The Department of Agriculture has informed me that it has licensed honey extractors under sec. 97.28, Stats., or its predecessors, for at least 20 years. This has been the practice since the enactment of the statute by ch. 510, Laws of 1947, which extended the licensing requirement from canners to all food processors.
Even though the statute here is probably unambiguous, I would point out that even if it were ambiguous the construction and interpretation given to a statute by the agency charged with its administration is entitled to great weight if such interpretation is reasonable and not contrary to the clearly expressed meaning of the law. Mednis v. Industrial Commission (1965), 27 Wis.2d 439,444, 134 N.W.2d 416; Chevrolet Division G.M.C. v. IndustrialCommission (1966), 31 Wis.2d 481, 488, 143 N.W.2d 532. When an administrative interpretation has been unchallenged over a period of many years, such interpretation will control. Forsberg PaperBox Co. v. Department of Taxation (1961), 14 Wis.2d 93,109 N.W.2d 457.
Moreover the clear intention of the law is that the state protect consumers from unwholesome processing of all types of food by a licensing system which includes inspections to assure proper handling and storing of food, sanitary conditions, and sound equipment. This intention is furthered by the broad construction *Page 272 
of the terms "extraction" and "food processing plant" adopted by the Department of Agriculture.
Section 97.28 (2), Stats., in addition to defining "food processing plant," also creates certain exceptions to the general requirement that processing activities be licensed. Among these exceptions are:
 ". . . retail merchants having a fixed or established place of business in this state if such merchant does not also sell at wholesale any food processed by the merchant or engage in [processing delicatessen foods for retail]." (Emphasis added.)
This exception excuses from the licensing requirement any person who is strictly a retail seller of honey and who has a fixed place of business in the state. The typical example is one who produces honey only for personal consumption and/or for sale at a roadside stand. However, one who sells at retail without a fixed place of business or at wholesale any portion of a honey crop is subject to licensing.
Several inquirers raise an equal protection issue because of this distinction. Should honey extractors who sell at wholesale be licensed when those selling at retail or extracting honey only for their own use are exempt from the licensing requirement? In other words, is the classification rational?
A licensing classification is "presumed to be valid unless the court can say no state of facts can reasonably be conceived that would sustain it." State ex rel. Real Estate Board v. Gerhardt
(1968), 39 Wis.2d 701, 710, 159 N.W.2d 622. In Adams v.Milwaukee (1913), 228 U.S. 572, the court upheld a classification of milk vendors which required those who produced milk outside of Milwaukee for sale in the city to obtain a certificate of inspection, including proof of administration of a tuberculin test to the animals, whereas those producing milk in the city needed only to obtain a permit from the city to keep cows. The court reasoned that the animals and milk-producing facilities within the city could be inspected by city health officials. while those outside the city could not be, and therefore it found the classification to be reasonable. *Page 273 
The same rationale may be applied in the present case. The only merchants exempted from the licensing requirement are those who have a fixed place of business in the state and who do not sell any of the food which they process at wholesale. A purchaser from an exempt processor-retailer has some opportunity if he wishes to observe or inquire into the cleanliness of the operation and the reputation of the retailer. On the contrary, if there are unidentified intermediate processors, the purchaser is more effectively prevented from observing the cleanliness of the facility or operation. Therefore, the state arguably has a stronger interest in regulating the production of such wholesale processors than it does in regulating the production of the processor-retailers. In my opinion the presence of this different interest is sufficient to sustain the classification as reasonable.
BCL:LMC