SINCLAIR and wife, Respondents, v. DEPARTMENT OF HEALTH & SOCIAL SERVICES, Appellant.

*No. 75–229. Submitted on briefs February 2, 1977.— Decided May 3, 1977.*
(Also reported in 253 N. W. 2d 245.)

For the appellant the cause was submitted on the briefs of *Bronson C. La Follette,* attorney general, and *George B. Schwahn,* assistant attorney general.

For the respondents the cause was submitted on the briefs of *Vance L. Sinclair* of Chippewa Falls.

A brief amicus curiae for Wisconsin Welfare Rights Organization was filed by *Angela E. Canellos, Alexandra L. Waeffler* and *Steven H. Steinglass* of *Milwaukee Legal Services, Inc.*

ABRAHAMSON, J. In April of 1974, Fred Sinclair and Lulu Sinclair, who are husband and wife, applied to Chippewa county authorities for payment of medical assistance under the provisions of sec. 49.46, Stats. Eligibility was asserted on the ground that the Sinclairs

were either receiving or were eligible to receive—the record is not clear as to which—Supplemental Security Income (SSI) payments under Title XVI of the Social Security Act, 42 USCA sec. 1381, *et seq.* The Chippewa county agency denied the application, and the Sinclairs petitioned the State Department of Health and Social Services for review. For purposes of the Department's review, it was stipulated by the parties that in October or November of 1973 the Sinclairs had transferred to their son several life insurance policies, of which he was the named beneficiary, having in the aggregate a cash value of about $8,000 and a face value of about $7,000. It was further stipulated that the transfer was not accompanied by any consideration and that it vested in the son all incidents of ownership, including the right to the cash value and the right to designate beneficiaries. In an order dated November 29, 1974, the Secretary of the State Department of Health and Social Services held that by reason of the divestment of these assets the county agency had properly denied medical assistance benefits to the Sinclairs.

The Sinclairs thereafter instituted an action under ch. 227, Stats., to obtain judicial review of the Department's ruling. By decision of June 2, 1975, the circuit court held that the Secretary had acted without authority and contrary to statute in denying the Sinclairs' application on the stated ground. Because no finding had been made as to whether the Sinclairs would have been entitled to benefits if the divestment of assets were not considered disqualifying, the matter was remanded to the Department for further proceedings consistent with the circuit court's decision. From a judgment entered accordingly, the Department of Health and Social Services has taken this appeal.

The issue presented for decision is whether a person applying for medical assistance benefits under sec. 49.46,

Stats., is rendered ineligible because of divestment of assets within two years preceding application for assistance.

Secs. 49.46 and 49.47, Stats., are the principal provisions of the Wisconsin Statutes dealing with that category of medical assistance known popularly as "medicaid." These statutes are based upon Title XIX of the Social Security Act, 42 USCA sec. 1396, *et seq.* If a state plan for medical assistance meets the criteria of 42 USCA sec. 1396a (a) and regulations promulgated thereunder, and is approved by the Secretary of the Department of Health, Education and Welfare (42 USCA sec. 1396a (b)), the federal government will pay to the state part of the cost of operating the plan, as computed pursuant to 42 USCA sec. 1396b. Secs. 49.46 and 49.47, Stats., correspond respectively to the two classes of recipients described in the applicable Department of Health, Education and Welfare regulations as (1) the categorically needy, and (2) the medically needy. *See* 45 CFR secs. 248.1–248.4; 42 USCA sec. 1396a (a) 10 (A), (C).

Sec. 49.46(1), Stats., defines the categorically needy as follows (in pertinent part) :

"(1) Eligibility (a) The following shall receive medical assistance under this section:

"1. Any person included in the grant of aid to families with dependent children.

"2. Any person under 21 years of age who is, or except for age or school attendance requirements would be a dependent child under s. 49.19.

"3. Any essential person.

"4. Any person receiving benefits under s. 49.177 or federal Title XVI.

" . . .

"(e) If an application under s. 49.47 (3) shows that the person has income and resources within the limitations of s. 49.19, federal Title XVI or s. 49.177, or that he is an essential person, an accommodated person or a

patient in a public medical institution, he shall be granted the benefits enumerated under sub. (2) whether or not he requests or receives a grant of any such aids."

Sec. 49.46 does not contain any resource or income limitations or provisions relating to the divestment of assets. It simply provides that benefits shall be paid in the case of an individual falling into one of the enumerated categories. The effect of sec. 49.46(1)(e) is that one who applies for assistance as a "medically needy" person (*i.e.* under sec. 49.47(3), Stats.), but who in fact would meet the income and resource limits of Title XVI or qualify under one of the other listed categories, is to be treated for purposes of sec. 49.46, Stats., as a categorically needy person, whether or not Title XVI or other benefits are actually being received.

■

Eligibility for aid to the medically needy is governed by sec. 49.47(4), Stats.[1] To be eligible an applicant

---

[1] "(4) ELIGIBILITY. (a) Any individual who meets the limitations on income and resources under pars. (b) and (c) shall be eligible for medical assistance under this section if such individual is:

"1. Under 21 years of age.

"2. A relative enumerated in s. 49.19(1)(a) with whom a dependent child as defined in s. 49.19(1)(a) is living.

"3. 65 years of age or older.

"4. Blind or totally and permanently disabled as defined under federal Title XVI.

". . .

"(b) Eligibility exists if his property does not exceed the following: a home and the land used and operated in connection therewith or in lieu thereof a mobile home if such home or mobile home is used as the person's or his family's place of abode; household and personal possessions, including one automobile or one truck; liquid assets not exceeding $1,750, if single, $3,500 for a family of 2, plus $300 for each additional legal dependent; and additional tangible personal property of reasonable value, considering the number of members in the family group, used in the production of income.

must be a member of one of the categories defined in sub. 4(a), and must meet the resource and income limitations of subs. (b) and (c). One who receives excess income may nevertheless receive benefits under this section if such excess income is first spent on medical expenses as provided in sub. (4)(c)2. Assistance to the medically needy is thus designed to meet the needs of individuals who are not eligible for or receiving categorical aid but who require medical care more costly

"(c) 1. Eligibility exists if his income does not exceed the maximum standard of need used in determining eligibility for aid to families with dependent children under s. 49.19 or state supplemental aid under s. 49.177. In this subdivision "income" includes, without limitation because of enumeration, all pensions from state, federal or private sources, annuities, social security payments and recurrent insurance payments from state, federal and private sources, wages, and salaries less employment expenses, alimony, returns on investments, net rents and net profits from business or professional enterprises. "Income" does not include earned or unearned income which would be excluded in determining income in computing the budget for the individual or family under s. 49.19(5) or 49.177, or for the aged, blind or disabled individual under federal Title XVI.

"2. Whenever an applicant has excess income, no certification shall be issued until such time as the excess income above the applicable limits has been expended for medical care or for any other type of remedial care recognized under state law or for personal health insurance premiums or both.

"(d) Any person who has conveyed, transferred or disposed of any property within 2 years prior to the date of making application for benefits under this section without receiving adequate and full consideration in money or money's worth shall, unless shown to the contrary, be presumed to have made such transfer, conveyance or disposition in contemplation of receiving benefits under this section and shall be ineligible to receive such benefits thereafter until the value of such property shall have been expended by or in behalf of such person for his maintenance need, including needs for medical care.

"(e) Temporary absence of a resident from the state shall not be grounds for denying the certificate or for the cancellation of an existing certificate."

than they are able to afford.[2] The resource limitation of sub. (b) is supplemented by the divestment provision of sub. (d), which is at issue in the case at bar. Under sub. (d) any transfer of property made within two years of application for benefits under sec. 49.47 is rebuttably presumed to have been made in contemplation of receiving such benefits, and unless the presumption is rebutted the applicant is ineligible to receive benefits until the value of the transferred property has been expended "by or in behalf of such person for his maintenance need, including need for medical care." In *Lerner v. Department of Health & Social Services,* 70 Wis.2d 670, 235 N.W.2d 478 (1975), this court upheld sec. 49.47 (4) (d) against the claim that it violated federal statutes and regulations. That case did not involve an attempt to apply the statute to an applicant for medical assistance to the categorically needy under sec. 49.46, however.

In the instant case the Sinclairs applied for benefits under sec. 49.46, Stats., on the basis that they were either receiving or were eligible to receive SSI benefits under federal Title XVI of the Social Security Act, 42 USCA sec. 1381, *et seq.*[3] Applicants for SSI are subject

---

[2] 45 CFR sec. 248.1(a)(2) provides:

*"Medically needy.* (i) An individual is considered to be medically needy if he has income and resources which exceed the amount of income and resources allowed to the categorically needy but which are insufficient to meet the costs of necessary medical and remedial care and services.

"(ii) In determining whether an individual's income is above the medically needy level, medical expenses are not deducted from income. However, in determining eligibility for medical assistance, incurred medical expenses must be deducted from income for a medically needy individual."

[3] Title XVI was extensively amended by Pub. L. 92–603, 86 Stat. 1465, *et seq.,* effective January 1, 1974. Prior to that time Title XVI had provided for grants to states having approved plans for aid to the aged, blind or disabled. The effect of the new legislation was to create "a national program to provide

to resource limits. 42 USCA secs. 1382, 1382b. However, the federal statutes do not bar eligibility on transfers of assets by an applicant, but merely direct the Secretary of Health, Education & Welfare to provide rules pertaining thereto.[4] The Secretary's rules expressly recognize that an individual may transfer property for the purpose of attaining eligibility under Title XVI; in fact, the transfer may be made within a specified period after the individual has begun drawing benefits. The transfer may be made for no consideration. It must, however, be legally binding and genuine. *See Social Security Claims Manual,* sec. 12507; 20 CFR sec. 416.1240.

The sole basis upon which the Department of Health and Social Services denied medical assistance to the Sinclairs was the fact that less than two years before applying for medical assistance they had transferred to

---

supplemental security income to individuals who have attained age 65 or are blind or disabled . . . ." (42 USCA sec. 1381) This federally-administered program replaces state-administered (but federally assisted) old age assistance programs such as that provided in secs. 49.20 and 49.22, Stats. 1971, which were repealed, also effective January 1, 1974, by sec. 15, ch. 147, Laws of 1973. Chapter 147, Laws of 1973, also modified secs. 49.46 and 49.47, Stats. to accommodate the changes in Titles XVI and XIX of the Social Security Act. However, the basic scheme of state medical assistance provided in secs. 49.46 and 49.47, Stats. 1973, is very similar to that which existed previously. Sec. 49.47 (4) (d), Stats. 1971, contained the same provision as does the present statute with respect to divestment of assets within two years of applying for benefits under sec. 49.47. Sec. 49.46, Stats. 1971, like present sec. 49.46, contained no income/resource limitations, other than those implicit in the applicant's status as receiving (or being eligible to receive) one of the specified types of non-medical public assistance.

[4] 42 USCA sec. 1382b(b) provides in part:

"The Secretary shall prescribe the period or periods of time within which, and the manner in which, various kinds of property must be disposed of in order not to be included in determining an individual's eligibility for benefits."

their son for no consideration insurance policies having a cash value of $8,000. The Department made no finding as to whether the transfer complied with regulations of the United States Department of Health, Education and Welfare, or whether the Sinclairs were in fact receiving or eligible to receive SSI benefits under Title XVI of the Social Security Act. Accordingly, for purposes of the present appeal we assume that the Sinclairs were receiving or eligible to receive such benefits, notwithstanding the transfer of the insurance policies in question.

As already indicated, sec. 49.46(1), Stats., requires unambiguously that any person receiving benefits under federal Title XVI "shall receive medical assistance under [sec. 49.46]." The Department of Health and Social Services argues, however, that the provision against transfers of property without consideration contained in sec. 49.47(4)(d), Stats., may properly be applied to an application for benefits under sec. 49.46, and that this provision justifies the Department's denial of benefits to the Sinclairs. Sec. 49.47(4)(d) provides:

"(d) Any person who has conveyed, transferred or disposed of any property within 2 years prior to the date of making application for benefits *under this section* without receiving adequate and full consideration in money or money's worth shall, unless shown to the contrary, be presumed to have made such transfer, conveyance or disposition in contemplation of receiving *benefits under this section* and *shall be ineligible to receive such benefits* thereafter until the value of such property shall have been expended by or in behalf of such person for his maintenance need, including needs for medical care." (Emphasis supplied.)

The operation of this provision is confined by its terms to applications for benefits under sec. 49.47, and ineligibility resulting from its operation is only with respect to "such benefits," under sec. 49.47. There is

nothing in the statute to suggest that its application was intended to qualify the plain command of sec. 49.46 that persons who are categorically needy within its terms shall be granted medical assistance.

Nor would a different conclusion as to the applicability of sec. 49.47(4)(d) follow if in fact the Sinclairs' application was predicated upon eligibility for Title XVI benefits rather than actual receipt thereof or if in fact application had been made under sec. 49.47 by one eligible under Title XVI. Sec. 49.46(1)(e) provides in pertinent part:

"If an application under s. 49.47(3) shows that the person has income and resources within the limitations of . . . federal Title XVI . . . he shall be granted the benefits enumerated under sub. (2) . . . ."

This language makes it clear that if the application discloses Title XVI eligibility, the applicant "shall be granted" the benefits provided by sec. 49.46, not those of sec. 49.47. Where an applicant for medical assistance is eligible for benefits under Title XVI, we think it plain that the legislature intended the applicant to be granted medical assistance under sec. 49.46 on the same basis as an applicant actually receiving Title XVI benefits, regardless of whether as a matter of form the application refers to sec. 49.46 or sec. 49.47.

The Department claims that secs. 49.46 and 49.47 are *in pari materia* and that when construed together sec. 49.47(4)(d) applies to applicants for assistance under sec. 49.46. At 2A Sutherland, *Statutory Construction,* sec. 51.01, p. 287 (4th ed. 1973), it is said:

"Other statutes dealing with the same subject as the one being construed—commonly referred to as statutes in pari materia—comprise another form of extrinsic aid deemed relevant as a source from which conclusions as to how a statute should be interpreted and applied

can be drawn. As is frequently remarked with reference to all of the extrinsic aids, however, other statutes may not be resorted to if the statute is clear and unambiguous without reference to it . . . ."

*See also Forest Home Dodge, Inc. v. Karns,* 29 Wis.2d 78, 85, 138 N.W.2d 214 (1965), where the court indicated that this rule of statutory construction is confined to a situation where an ambiguity in statutory wording exists. Here there is no ambiguity as to whether sec. 49.47(4)(d) applies to the case at bar. Giving the words their plain and obvious meaning, the statute does not apply. The legislature has defined two methods by which an individual can be eligible for medical assistance and has set forth in separate statutes the criteria for eligibility under each.[5] A court is not empowered to rewrite the cited statutes under the guise of construing them.

The Department also relies upon the principle that a court will normally accord great weight to the interpretation placed upon a statute by the administrative agency charged with the duty of applying the statute. *Pabst v. Department of Taxation,* 19 Wis.2d 313, 323, 324, 120 N.W.2d 77 (1963) ; *Mednis v. Industrial Comm.,* 27 Wis.2d 439, 444, 134 N.W.2d 416 (1965). However, that rule of construction has no application where the statute is not ambiguous. *Nelson v. Ohio Casualty Ins. Co.,* 29 Wis.2d 315, 320, 139 N.W.2d 33 (1966) ; *National Amusement Co. v. Department of Revenue,* 41 Wis.2d

---

[5] The Department argues that sec. 49.47(4)(d), Stats., is made applicable to the instant case by sec. 49.45(2)(a)3, Stats., which requires the Department to "determine the eligibility of persons for medical assistance . . . pursuant to ss. 49.46 and 49.47." Sec. 49.45(2)(a)3 does not intermix the separate and independent provisions of secs. 49.46 and 49.47 or work any change in the substance thereof. It merely assigned to the Department the responsibility for determining eligibility for the two types of assistance.

261, 274, 163 N.W.2d 625 (1969). Moreover, there is no indication in the record that the Department has adopted the construction it urges here in any but this particular case. Procedures in respect to the processing of applications for medical assistance are the subject of ch. V of the Department's *Income Maintenance Manual*. The manual does provide that as to assistance for the medically needy under sec. 49.47, "Persons are not eligible who have transferred any property other than exempt resources within two years of the application date, unless full market value was received" (p. V–C–9). However, we find no provision in the manual purporting to authorize denial of assistance to the categorically needy on the basis of divestment of assets. Rather, at p. V–C–2 of the manual we find the following:

"Categorically Needy persons are those who are receiving or are eligible to receive AFDC or SSI money payments and other related groups.

"1) MA eligibility automatically exists for persons who are receiving AFDC or SSI money payments.

". . .

"3) Individuals who are eligible for but not receiving benefits from SSI and/or State Supplement are automatically eligible for Medical Assistance as Categorically Needy."

Thus it appears that in denying automatic eligibility to the Sinclairs the Department has taken a position contrary to that called for by its own procedural manual.

The Department next points out that it is a cardinal rule of construction that a statute should if possible be construed so as to give effect to all of its parts.[6] The Department claims that provisions of federal law, namely 42 USCA sec. 1396a (a) 10 (B) and 45 CFR sec. 248.10 (c) (3), would prevent applying the limits of sec. 49.47

---

[6] *State ex rel. Knudsen v. Board of Educ.*, 43 Wis.2d 58, 65, 168 N.W.2d 295 (1968).

(4) to an applicant for aid under sec. 49.47 if those limits are not also applied under sec. 49.46, Stats. This argument is without merit. 42 USCA sec. 1396a (a) 10 (B)[7] speaks to the "amount, duration or scope" of medical assistance, not eligibility for assistance, and in any event the statute precludes giving less generous aid to the categorically needy, who are covered by sec. 49.46 in Wisconsin, than to the medically needy under sec. 49.47, not vice versa. As to 45 CFR sec. 248.10(c)(3),[8] it will be noted that the rule excepts conditions relating to "need," and the provisions of sec. 49.47(4) relating to divestment of assets clearly are part of the standard of need adopted by our legislature. Moreover, sec. 248.10 has applied only to Guam, Puerto Rico and the Virgin Islands since January 1, 1974. The analogous rule presently applicable to Wisconsin shows unambiguously that there is no prohibition against applying more stringent financial eligibility conditions to the medically needy than to the categorically needy.[9] Indeed, a contrary

---

[7] 42 USCA sec. 1396a(a)10(B) requires of state medical assistance plans:

"(B) that the medical assistance made available to any individual described in clause (A)—

"(i) shall not be less in amount, duration, or scope than the medical assistance made available to any other such individual, and

"(ii) shall not be less in amount, duration, or scope than the medical assistance made available to individuals not described in clause A; . . . ."

[8] 45 CFR 248.10(c)(3) provides, as one of the conditions for approval of a medical assistance plan under Title XIX:

"Except for need, the conditions of eligibility that are imposed on elective groups [i.e., the medically needy] . . . are not more stringent or more numerous than those imposed on individuals receiving aid or assistance under any of the approved state plans."

[9] 45 CFR sec. 248.2(b) provides in part:

"*Except for financial eligibility*, the conditions of eligibility that are imposed on elective groups

". . .

result would be absurd, since the intent of aid to the medically needy is to provide medical assistance to persons who have "income and resources which exceed the amount of income and resources allowed to the categorically needy but which are insufficient to meet the costs of necessary medical . . . care . . . ." 45 CFR sec. 248.1 (a) (2) (i).

Finally, we note the Department's suggestions to the effect that public policy requires the result for which it contends. The short answer to this is that determination of public policy is a matter primarily for the legislature, and where the legislature has clearly stated its policy in the form of a statute, as is here the case, that determination is binding on the Department and the courts. As was said in *Borgnis v. Falk,* 147 Wis. 327, 351, 133 N.W. 209 (1911) :

"Public policy on a given subject is determined either by the constitution itself or by statutes passed within constitutional limitations. . . . The people, acting directly by means of a referendum, or through their representatives in constitutional conventions or legislative bodies, are the makers of public policy, and it is only when the people have failed to speak in these methods that the courts can be said to have power to make public policy by decision. A constitutional statute cannot be *contrary* to public policy,—it *is* public policy."

In any event the "policy" behind sec. 49.46 has never been that the Department may interpose the conditions found in sec. 49.47 or elsewhere to bar eligibility for medical assistance under sec. 49.46. Before the recent statutory amendments[10] one receiving state old age as-

"(2) In the case of aged, blind or disabled individuals, are not more stringent or more numerous than those imposed on such individuals receiving benefits under Title XVI . . . ." (Emphasis supplied.)

[10] *See* note 3 *supra.*

sistance under sec. 49.22, Stats. 1971, was automatically eligible for medical assistance under sec. 49.46. Now those who are receiving or are eligible to receive SSI benefits under federal Title XVI are automatically eligible for assistance under sec. 49.46. Neither before nor after the amendments was the Department authorized to impose additional conditions upon medical assistance to the categorically needy. Formerly the Department might have invoked the resource limits and divestiture provisions of sec. 49.22, Stats. 1971,[11] to deny eligibility for old age assistance, which would have removed the applicant's status as a categorically needy person and thereby rendered the applicant ineligible for medical assistance to the categorically needy under sec. 49.46. However, the state old age assistance program no longer exists but has been replaced by federal Title XVI. What the Department appears in reality to be arguing here is the relative merit of the philosophies with respect to divestment of assets embodied in the former old age assistance program and in federal Title XVI. That question has been settled by our state and national legislatures, and it is to them that arguments for a change in

---

[11] Sec. 49.22(1), Stats. 1971, contained resource limitations and a provision disqualifying an applicant who had transferred property without adequate consideration for purposes of obtaining old age assistance:

"Old-age assistance may be granted to a person only if:

". . .

"(e) He has not conveyed or transferred any property in contemplation of such assistance or to avoid the provisions of ch. 49. Any transfer of property made after old-age assistance has been granted or within 2 years prior to application for assistance and without an adequate and full consideration in money or money's worth shall, unless shown to the contrary, be presumed to have been made in contemplation of such assistance, or to avoid the provisions of ch. 49."

the policy underlying medical assistance to the categorically needy must be addressed.

*By the Court.*—Judgment affirmed.