Frank SWANSON and Betty Swanson,
Petitioners-Appellants,

v.

DEPARTMENT OF HEALTH & SOCIAL SERVICES of the State
of Wisconsin, Defendant-Respondent.†

Court of Appeals

*No. 81–018. Submitted on briefs August 19, 1981.—*
*Decided October 6, 1981.*
(Also reported in 312 N.W.2d 833.)

† Petition to review denied.

For the petitioners-appellants the cause was submitted on the briefs of *Mary Fisher Bernet* of Legal Action of Wisconsin, Inc., of Milwaukee.

For the defendant-respondent the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *F. Thomas Creeron III,* assistant attorney general.

Before Decker, C.J., Moser, P.J., and Hanley, Reserve Judge.

MOSER, P.J.   This is an appeal from a judgment affirming the findings of fact, conclusions of law and order of the Wisconsin Department of Health and Social Services (Department).  The Department's order affirmed the denial of Frank and Betty Swansons' (Swansons) application for medical assistance (medicaid) for the period of February 1 to July 31, 1980.

On February 12, 1980, the Swansons applied for medicaid[1] as medically needy persons through the Milwaukee County Department of Social Services (County Agency). The County Agency initially found the Swansons ineligible because they had excess income[2] of $37.55 per month or $225.30 for the first six-month period.  The County Agency found, therefore, that the Swansons had a spend-

---

[1] 42 U.S.C. §§ 1396 *et seq.* (1976); secs. 49.43–49.495, Stats.

[2] Sec. 49.47(4)(c)1, Stats., provides:

(c)1. Eligibility exists if the individual's income does not exceed the maximum standard of need used in determining eligibility for aid to families with dependent children under s. 49.19 or state supplemental aid under s. 49.177. In this subdivision "income" includes earned or unearned income that would be included in determining eligibility for the individual or family under s. 49.177 or 49.19, or for the aged, blind or disabled under 42 USC 1381 to 1385, in effect on the effective date of this act (1979). "Income" does not include earned or unearned income which would be excluded in determining eligibility for the individual or family under s. 49.177 or 49.19, or for the aged, blind or disabled individual under 42 USC 1381 to 1385, in effect on the effective date of this act (1979).

down requirement[3] of $225.30 for that period. The Swansons were later found to have met that requirement as of March 23, 1980, and were certified for medicaid from that date until July 31, 1980.

In determining when the spend-down requirement was met, the County Agency refused to consider unpaid medical expenses of $4,824.50 which the Swansons had incurred prior to February 12, 1980. Instead, the County Agency considered only those expenses incurred after the date of application. It is clear that if the earlier expenses were counted, the Swansons would have been eligible for medicaid on February 1, 1980.

The Swansons requested a hearing before the Department pursuant to sec. 49.50(8), Stats., to review the denial. After the hearing, the examiner, acting for the Department, made findings of fact and conclusions of law and entered an order on May 21, 1980, affirming the County Agency and denying the Swansons' claim.

The Swansons petitioned for a review of the Department's decision. In a judgment entered on December 8, 1980, the trial court affirmed the Department's denial, noting that "the administrative rule promulgated by the State of Wisconsin is in compliance with and is expressly authorized by the relevant federal regulation." The

---

[3] Sec. 49.47(4)(c)2, Stats., provides:

2. Whenever an applicant has excess income, no certification shall be issued until such time as the excess income above the applicable limits has been expended for medical care or for any other type of remedial care recognized under state law or for personal health insurance premiums or both.

Wis. Adm. Code, sec. HSS 103.02(16) provides:

(16) SPEND-DOWN REQUIREMENTS FOR ALL PERSONS WHO ARE NOT RESIDING IN INSTITUTIONS. (a) Medical expenses to be considered for spend-down purposes include all costs for medical services and goods that could be covered by medical assistance, plus health insurance premiums. Only those medical expenses which are incurred during the spend-down period can be used to meet the spend-down requirement.

Swansons appeal from this judgment alleging that the Department's refusal to consider medical expenses other than those incurred during the spend-down period is in conflict with federal law.

In determining the spend-down requirement, the County Agency and Department relied on Wis. Adm. Code, sec. HSS 103.02(16)(a) which provides, in part: "Only those medical expenses which are *incurred during the spend-down period* can be used to meet the spend-down requirement." [Emphasis added.] It is undisputed that in order for Wisconsin to obtain partial federal reimbursement for its medicaid program, the regulations governing Wisconsin's program must comply with applicable federal law.[4] The only issue before this court, therefore, is whether the spend-down requirement in sec. HSS 103.02(16)(a) conflicts with federal statutes, regulations or binding instructions. Because we conclude that neither the federal statute nor properly promulgated regulations preclude the limitation contained in sec. HSS 103.02(16)(a), and that instructions of the United States Department of Health and Human Services (HHS), which purport to proscribe such limitations, are not entitled to the same weight as statutes and regulations, we affirm.

Where an order of a regulatory agency is appealed to this court, the standard of review is the same as that of the circuit court in similar cases.[5] The issue here raised involves the interpretation and application of federal law.

---

[4] *Harris v. McRae,* 448 U.S. 297, 301 (1980); *Sinclair v. DH&SS,* 77 Wis. 2d 322, 325, 253 N.W.2d 245, 246 (1977); 42 U.S.C. § 1396a (1976); 45 C.F.R. § 201.3(d) (1980). *See also Gray Panthers v. Administrator Health Care Fin. Adm.,* 629 F.2d 180, 181 (D.C. Cir. 1980).

[5] *Boynton Cab Co. v. D.I.L.H.R.,* 96 Wis. 2d 396, 405–06, 291 N.W.2d 850, 855 (1980); sec. 227.20, Stats.

There is no dispute of fact. Under these circumstances, we are to review the Department's conclusion *ab initio* and need not accord the Department any deference.[6]

## STATUTES AND REGULATIONS

Medicaid is a joint federal and state program which provides payment for medical services to eligible persons.[7] The program was created in 1965 under Title XIX of the Social Security Act[8] to provide assistance to both categorically needy and medically needy individuals. The medically needy are those who otherwise qualify with income and resources above the limits set for the categorically needy; these persons may receive benefits after they incur medical expenses which reduce their income below the stated limits.[9] Wisconsin's plan includes both groups.[10] Wisconsin's regulations, like those of other states which choose to participate in the program, must conform to Title XIX and applicable regulations.[11]

The only federal statute to deal specifically with spend-down requirements is 42 U.S.C. sec. 1396a(a)(17) (1976).[12] The applicable federal regulations appear at

---

[6] Note 5, *supra.*

[7] *See* note 1, *supra.*

[8] 42 U.S.C. § 1396 *et seq.* (1976).

[9] 42 U.S.C. § 1396a(a)(10)(C) (1976); 42 C.F.R. §§ 435.4 and 435.831 (1980).

[10] *Sinclair, supra* note 4, at 325–28, 253 N.W.2d at 246–48 (1977); secs. 49.46 and 49.47, Stats; Wis. Adm. Code, sec. HSS 103.

[11] *See* note 4, *supra.*

[12] 42 U.S.C. § 1396a(a)(17) (1976) provides:

§ 1396a(a) A State plan for medical assistance must—

(17) include reasonable standards . . . for determining eligibility for and the extent of medical assistance under the plan which (A) are consistent with the objectives of this subchapter, (B) provide for taking into account only such income and resources as are, as determined in accordance with standards prescribed

42 C.F.R. secs. 435.301(a)(ii) and 435.831 (1980).[13] Both the statute and the regulations mandate that an applicant incur the required amount of medical bills to be found eligible. However, although the regulations prescribe the time period for computing income, neither the statute nor the regulations specify the time period during which medical expenses must be incurred in order to reduce the income from a given period.

The Swansons correctly point out that sec. 1396a(a)(17) requires a state plan to take into account "except to

by the Secretary, available to the applicant or recipient . . . and provide for flexibility in the application of such standards with respect to income by taking into account, except to the extent prescribed by the Secretary, the costs (whether in the form of insurance premiums or otherwise) incurred for medical care or for any other type of remedial care recognized under State law.

[13] 42 C.F.R. § 435.301(a)(ii) (1980) provides in part:
(a) A Medicaid agency may provide Medicaid to individuals specified in this subpart who—
(1) Either—

. . . .
(ii) If their income is more than allowed under those standards, have incurred medical expenses at least equal to the difference between their income and the applicable income standard . . . .

42 C.F.R. § 435.831 (1980) provides in part:
The agency must determine income eligibility of medically needy individuals in accordance with this section. The agency must use a prospective period of not more than 6 months to compute income.

. . . .
(c) *Deduction of incurred medical expenses.* (1) If countable income exceeds the income standard, the agency must deduct from income, in the following order, incurred medical expenses that are not subject to payment by a third party:

. . . .
(ii) Expenses incurred by the individual or family or financially responsible relatives for necessary medical and remedial services that are recognized under State law but not included in the plan.

. . . .
(2) The agency may set reasonable limits on the amounts of incurred medical expenses to be deducted from income under paragraphs (c)(1)(i) and (ii) of this section.

the extent prescribed by the Secretary the costs (whether in the form of insurance premiums or otherwise) incurred for medical care." The Swansons argue that because the Secretary has not specifically authorized the states to disregard any type of medical expense, all medical expenses for which an applicant remains liable must be considered. The rules of statutory construction persuade us otherwise. The term "the costs" is followed by the explanation "whether in the form of insurance premiums or otherwise." Where specific words follow a general term, the general term is applied only to things that are similar to those enumerated.[14] It is clear that the term "the costs" refers only to the various kinds of medical costs and does not describe an unlimited period of time for incurring the various costs.

We also reject the Department's contention that 42 C.F.R. sec. 435.831(c)(2) (1980) expressly authorizes sec. HSS 103.02(16)(a). Section 435.831(c)(2) provides: "The agency may set reasonable limits on the *amounts* of incurred medical expenses to be deducted from income . . . ." [Emphasis added.] Given its common sense meaning, the regulation permits a state to set a reasonable limit on the aggregate or total incurred medical expenses that are deductible for spend-down purposes. It does not expressly allow a state to impose a cutoff based solely upon when the expenses are incurred.

We conclude that although federal statutes and regulations do not specifically authorize the spend-down limitation in Wis. Adm. Code, sec. HSS 103.02(16), neither do they preclude it. We note, however, that these statutes and regulations do afford states flexibility in adopting medicaid programs. 42 U.S.C. sec. 1396(a)(17) provides

---

[14] C. Sands, 2A Statutes and Statutory Construction, § 47.17, at 103 (1973).

that "[a] state plan for medical assistance must . . . include reasonable standards . . . for determining eligibility for and the extent of medical assistance under the plan which are consistent with the objectives of this subchapter . . . ." This language confers broad discretion on the states to adopt standards for determining the extent of medical assistance.[15] Therefore, unless there is a binding administrative direction to the contrary, Wisconsin's spend-down limitation complies with federal law.

## ADMINISTRATIVE INSTRUCTIONS

HSS has issued a number of medical assistance manuals and directives to clarify and explain the meaning of the regulations. On August 20, 1974, the United States Department of Health, Education and Welfare (HEW—predecessor of HHS) issued a directive which indicated that excess income for a given period was to be offset only by medical expenses incurred within that period.[16] Wisconsin Adm. Code, sec. HSS 103.02(16) is specifically authorized by this provision. However, a 1976 insertion in the federal Medical Assistance Manual directly conflicts with the 1974 spend-down requirement. It states, in part:

Within the above guidelines, any medical expenses which are the current liability of the applicant shall be considered, including:

(1) Unpaid expenses incurred at any time prior to the date of application, providing the applicant remains liable for payment. Past debts which have been forgiven by the provider shall not be considered as a current liability of the applicant.[17]

---

[15] *Beal v. Doe*, 432 U.S. 438, 444 (1977).

[16] *Tinkham v. Department of Pub. Welfare*, 417 N.E.2d 452, 455 (Mass. App. 1981).

[17] Medical Assistance Manual, SRS–AT–76–109 (MSA), § 4–30–30, at 18 (1976). (Record at 17).

On May 13, 1979, Dan Wortman, acting federal administrator, issued a memorandum to Max Odom, acting federal regional commissioner of region 6, which appeared to affirm the 1976 manual insertion. This memorandum stated that under the Medical Assistance Manual a person applying for medical assistance can use any medical obligations incurred prior to, but still owed by, the applicant as a setoff to the spend-down requirement, and that the state may not arbitrarily exclude those past-due medical bills in determining such spend-down.

The record also contains a letter, dated March 13, 1979, from Martin D. Stanton (Stanton), regional health director of HEW, to Donald E. Percy (Percy), secretary of the Department. The letter advised that the Wisconsin Medical Assistance Handbook and the state policy for spend-down was "not in compliance with federal regulations and *policy*." [Emphasis added.] Stanton's letter requested that the Wisconsin policy be changed. On April 10, 1979, Bernard Stumbras (Stumbras) from the Department's division of economic assistance wrote Stanton disputing Stanton's conclusions and requesting information concerning what appeared to be an obvious contradiction in the Medical Assistance Manual. Stumbras pointed out that at another page the manual stated:

When the applicant can show that, during the period for which income is evaluated in the eligibility determination, he has incurred or will incur medical expenses in an amount sufficient to reduce his income to the applicable medically needy income level, he is entitled to Medicaid coverage (provided he is otherwise eligible) for any additional care or services he needs which are included in the plan.[18]

Stumbras further requested that Stanton advise if there is any specific law or regulation that supports insertion 4–30–30 in the federal manual. On April 30, 1979, Stanton responded to Stumbras:

---

[18] *Id.* at 19 (Record at 24).

Finally, you asked for a specific law or regulation supporting the Medical Assistance Manual citation used in our letter of March 14. *There is none;* however, all manuals are reviewed and approved by the Office of General Counsel to ensure that they comport with the law and regulation. Condequently [*sic*], Federal *guidelines* have the force of the law and regulation. [Emphasis added.]

It is evident that the latest directives of HHS contained in the manual and letters provide some support for the Swansons' position. Whether any of them are dispositive of the issue at hand depends upon whether the directives have binding effect.

Federal law and agency regulations adopted pursuant to federal law are binding on the states.[19] Agency rulemaking must comport with the Federal Administrative Procedure Act which allows for informal and formal rulemaking.[20] Rules adopted by both methods are not effective until published in the Federal Register.[21] However, agency interpretive rules are excepted from the mandate of informal and formal rulemaking.[22] Although such interpretive rules are not controlling on the courts, they do constitute guidelines to which a court may resort.[23] The weight to be given such a guideline depends upon "the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade."[24]

[19] *General Elec. Co. v. Gilbert,* 429 U.S. 125, 141 (1976); *Carleson v. Remillard,* 406 U.S. 598, 600 (1972); *Townsend v. Swank,* 404 U.S. 282, 286 (1971).

[20] 5 U.S.C. § 553(d) (1976).

[21] 5 U.S.C. § 553(b) (1976).

[22] 5 U.S.C. § 553(b)(A) (1976).

[23] *Skidmore v. Swift & Co.,* 323 U.S. 134, 140 (1944); *State v. Amoco Oil Co.,* 97 Wis. 2d 226, 243, 293 N.W.2d 487, 495 (1979).

[24] *Skidmore, supra* note 23, at 140.

The Swansons argue that the 1976 manual insertion and Stanton's letters constitute administrative guidelines that control the resolution of this dispute. In support of this contention, the Swansons cite *Thorpe v. Housing Authority of Durham*[25] which held, "The ultimate criterion is the administrative interpretation, which becomes of controlling weight unless it is plainly erroneous or inconsistent with the regulation."[26] *Thorpe* involved the interpretation of a circular issued by the Department of Housing and Urban Development (HUD) which amended HUD's Low Rent Management Manual. The circular required that before a tenant in federally supported housing can be evicted, the local manager must give the individual notice and an informal hearing. The Supreme Court determined the circular to be a mandatory regulation promulgated pursuant to the secretary's broad regulatory authority under the Federal Housing Act.

The Department argues that the manual insertion constitutes a substantive or legislative rule that is void because it was not promulgated in accordance with the Administrative Procedure Act. Alternatively, the Department contends that, if the 1976 insertion is an interpretive guideline, it is entitled to consideration but not to the weight which must be accorded to regulations. The Department relies on *General Electric Co. v. Gilbert*[27] to support its alternative proposition. In that case, the plaintiff-respondent claimed that the nonoccupational sickness and accident provision in an employer's insurance plan, which did not allow for pregnancy payments, discriminated on the basis of sex. The record reflected that the general counsel for the Equal Employment Opportunity Commission (EEOC) issued a letter dated October 17, 1966, which opined that an employer's insurance

[25] 393 U.S. 268 (1969).
[26] *Id.* at 276.
[27] Note 19, *supra.*

plan which excluded disability benefits for pregnancy did not violate the law. EEOC issued another letter reasserting this position a short time later. In 1972, EEOC issued a guideline which reversed its earlier position. The Court concluded that the 1972 guideline could be given very little weight when "judged by the standards enunciated in *Skidmore*."[28]

The similarities between *Gilbert* and the case at hand convince us that *Gilbert* is controlling. The directives from HHS have been confusing and contradictory.[29] The 1976 insertion is an outright contradiction of the 1974 directive. The same manual at a different page seems to contradict the 1976 insertion. Stanton admitted there is no law or regulation supporting the 1976 insertion. In one communication Stanton referred to the insertion as a "guideline" and in another communication as "policy." If the instructions in the insertion are mere policy, they have no force and effect as law.[30] Even if the instructions are a guideline, when judged by the standards of *Skidmore v. Swift & Co.*,[31] they can be accorded little deference. The instructions in the insertion do not demonstrate the validity of HHS's reasoning, consistency or persuasive power.[32]

In view of this holding we need not reach the Department's contention that the insertion constitutes an invalid substantive rule. We conclude that the spend-down provision of sec. HSS 103.02(16) does not conflict with any

---

[28] *General Elec. Co., supra* note 19, at 143; *Skidmore, supra* note 23, at 140.

[29] *See General Elec. Co., supra* note 19, at 140–145.

[30] *See Iowa Power & Light Co. v. Burlington N., Inc.*, 647 F.2d 796, 811 (8th Cir. 1981); *Lewis-Mota v. Secretary of Labor*, 469 F.2d 478, 481–82 (2d Cir. 1972).

[31] *Skidmore, supra* note 23, at 140.

[32] *Accord, Tinkham, supra* note 16, 417 N.E.2d at 458.

binding instructions from HHS.  The trial court did not err when it dismissed the Swansons' petition.

*By the Court.*—Judgment affirmed.