[Civ. No. 21290. Third Dist. Dec. 16, 1983.]

FRANK C. PALUMBO, Plaintiff and Appellant, v.
BEVERLEE MYERS, as Director, etc., Defendant and Respondent.

COUNSEL

Hassard, Bonnington, Rogers & Huber and David E. Willett for Plaintiff and Appellant.

George Deukmejian and John K. Van de Kamp, Attorneys General, Thomas E. Warriner, Assistant Attorney General, and Elisabeth C. Brandt, Deputy Attorney General, for Defendant and Respondent.

OPINION

SPARKS, J.—This case involves a challenge by a physician to the statutory and regulatory scheme governing payments to health care providers under

the Medi-Cal Act (Welf. & Inst. Code, § 14000 et seq.).[1] The question posed is whether a physician who treats a Medi-Cal patient and accepts payment for his services under the Act may recover the difference between the Medi-Cal payment and his usual and customary fee when the patient later recovers a settlement from a third party tortfeasor and the settlement allocates funds for the full payment of that fee. Welfare and Institutions Code section 14019.4, subdivision (a), prohibits a physician from attempting to obtain payment for the balance of his fee from any person except a "third party payer who provides a contractual or legal entitlement to health care services." The question turns on whether a tortfeasor is such a statutory third party payer. The trial court held that the phrase "contractual or legal entitlement" did not include tort recoveries and that plaintiff therefore could not recover the balance of his fee from the patient's personal injury settlement. We agree and shall affirm.

## FACTS

Plaintiff is an orthopedic surgeon practicing medicine in Sacramento County. He participates in the Medi-Cal program as a provider of physician services by treating patients who are entitled to Medi-Cal benefits. Defendant is the former Director of the Department of Health Services (Department). The Department administers the Medi-Cal program.

Mary Kimble, a Medi-Cal beneficiary,[2] was injured in an automobile accident on September 23, 1977. She was treated by plaintiff for injuries suffered as a result of that accident. When he initially treated Ms. Kimble, plaintiff was unable to determine who would ultimately be responsible for the payment of his services. In order to comply with the regulation requiring prompt claims, plaintiff timely billed the Medi-Cal program for services

---

[1] "Title XIX of the Social Security Act [42 U.S.C. § 1396 et seq.], enacted in 1965, authorizes Federal grants to States for medical assistance to low-income persons who are age 65 or over, blind, disabled, or members of families with dependent children. The program is jointly financed by the Federal and State governments and administered by States. Within broad Federal rules, each State decides eligible groups, types and range of services, payment levels for services, and administrative and operating procedures. Payments for services are made directly by the State to the individuals or entities that furnish the services." (42 C.F.R. § 430.0(a) (1982).)

Medi-Cal is California's medical assistance program enacted pursuant to that federal law. (*California Medical Assn.* v. *Brian* (1973) 30 Cal.App.3d 637, 642 [106 Cal.Rptr. 555]; Cal. Admin. Code, tit. 22, § 50058.)

"The California Medi-Cal program funds 'physician, hospital or clinic outpatient, [and] surgical center' services, as well as 'inpatient hospital services,' for 'recipients of public assistance [and] medically indigent aged and other persons.' (Welf. & Inst. Code, §§ 14000, 14132, subds. (a) & (b).)" (*Committee to Defend Reproductive Rights* v. *Myers* (1981) 29 Cal.3d 252, 258 [172 Cal.Rptr. 866, 625 P.2d 779, 20 A.L.R.4th 1118].)

[2] A "beneficiary" is "a person who has been determined eligible for Medi-Cal." (Cal. Admin. Code, tit. 22, § 50024.)

rendered to Ms. Kimble in the sum of $3,739, his usual and customary fee for such services.[3] He also billed Ms. Kimble. Medi-Cal paid plaintiff $2,172, the amount authorized by its fee schedule. Thus plaintiff's usual fee for services was $1,567 greater than the amount paid him by Medi-Cal.

On May 31, 1978, Ms. Kimble filed a personal injury action. She submitted the bill sent by plaintiff to her attorneys. On December 7, 1979, the Department sent a claim of lien in the sum of $18,424 to Ms. Kimble's attorneys.[4] Thereafter Ms. Kimble settled her lawsuit. In that settlement $3,379 was allocated for the payment of plaintiff's full bill. Her counsel sent Medi-Cal its prorated share and mailed a check for $1,567 to plaintiff for the balance due for his medical services. Plaintiff has not cashed this check because of the Department's warning that doing so would violate Welfare and Institutions Code section 14019.4, and California Administrative Code, title 22, sections 51002 and 51471, subjecting him to a proceeding under Welfare and Institutions Code section 14123, and/or civil or criminal liability under 42 United States Code section 1396h(d).

Plaintiff then brought this action for declaratory relief contending that because Ms. Kimble recovered compensation from a third party neither the

---

[3]Section 51008, subdivision (a) of title 22, California Administrative Code establishes the requirements for submission to the Department of bills for services rendered to Medi-Cal patients. That regulation requires that, except for good cause, providers submit bills for services not later than the second month following the month in which the service was performed. Failure to submit the billing timely results in a forfeiture of the right to payment from the program.

The parties agree that the Medi-Cal schedule of reimbursement for physicians results in payments which are less than the average fee. They disagree, however, on how much less; plaintiff contends that the reimbursement is equal to 50 percent of the average usual and customary fee. The Department asserts that the reimbursement is equal to 66.4 percent of the statewide weighted average fee charged by physicians to the program.

[4]Medi-Cal paid a total of $20,206 for services rendered to Kimble, but submitted a lien claim for only $18,424. The balance of $1,782 had been paid under several other (apparently unauthorized) Medi-Cal numbers, and was therefore overlooked when the lien was presented. However, none of the $1,782 which went unclaimed related to services performed by plaintiff.

Medi-Cal recovered $13,101 or 71 percent of its $18,424 lien from the settlement proceeds. The difference, $5,323, was allocated, pursuant to Welfare and Institutions Code section 14124.72, subdivision (d), as the Department's statutory share of Ms. Kimble's attorney's fees and costs incurred in prosecution of the action. That subdivision reads: "Where the action or claim is brought by the beneficiary alone and the beneficiary incurs a personal liability to pay attorney's fees and costs of litigation, the director's claim for reimbursement of the benefits provided to the beneficiary shall be limited to the amount of the medical expenditures for the benefit of the beneficiary less 25 percent which represents the director's reasonable share of attorney's fees paid by the beneficiary and that portion of the cost of litigation expenses determined by multiplying by the ratio of the full amount of the expenditures to the full amount of the judgment, award, or settlement."

Thus Medi-Cal recouped from Ms. Kimble's settlement $1,542 of the $2,172 it paid plaintiff.

statute nor the regulations bar him from obtaining full payment from the third party's settlement. The trial court held that this statute and these regulations prohibit plaintiff from seeking or accepting additional compensation for services rendered to Ms. Kimble. This appeal followed.

## DISCUSSION

Welfare and Institutions Code section 14019.4, subdivision (a), provides: "Any provider of health care services who obtains a label or copy from the Medi-Cal card or other proof of eligibility pursuant to this chapter shall not seek reimbursement nor attempt to obtain payment for the cost of such covered health care services from the eligible applicant or recipient, or any person other than the department or third party payer who provides a contractual or legal entitlement to health care services."[5]

The parties disagree as to the interpretation of clause "third party payer who provides a contractual or legal entitlement to health care services." Plaintiff contends that a third party tortfeasor who agrees by settlement to pay for medical services necessitated by his negligence is such a third party payer.

The Department retorts that this "other coverage" clause refers to an actual entitlement to health care services or payment for their cost existing at the time the services are received by a beneficiary. A personal injury or "casualty," recovery is not, it argues, a "contractual or legal entitlement to health care services." The Department further argues that a provider of Medi-Cal services may not "balance bill" under any circumstances where

---

[5]Title 22, California Administrative Code, section 51002, subdivision (a), relating to beneficiary billing, similarly provides: "A provider of service under the Medi-Cal program shall not submit claims to or demand or otherwise collect reimbursement from a Medi-Cal beneficiary, or from other persons on behalf of the beneficiary, for any service included in the Medi-Cal program's scope of benefits in addition to a claim submitted to the Medi-Cal program for that service, except to: [¶] (1) Collect payments due under a contractual or legal entitlement pursuant to Section 14000 (b) of the Welfare and Institutions Code. [¶] (2) Bill a long-term patient for the amount of his liability. [¶] (3) Collect copayment pursuant to Welfare and Institutions Code Section 14134."

Section 51471, subdivision (a) of that same title likewise provides: "(a) No provider shall submit a claim to, or demand or otherwise collect reimbursement from, a Medi-Cal beneficiary or from other persons on behalf of the beneficiary for any service included in the Medi-Cal program's scope of benefits in addition to a claim submitted to the Medi-Cal program for that service except to: [¶] (1) Collect payments due under a contractual or legal entitlement pursuant to Section 14000(b) of the Welfare and Institutions Code. [¶] (2) Bill long-term care for the amount of his share of cost. [¶] (3) Collect copayments due under Section 51004."

Welfare and Institutions Code section 14000, subdivision (b), referred to in these two regulations, reads: "The benefits available under this chapter shall not duplicate those provided under other federal or state laws or under other contractual or legal entitlements of the person or persons receiving them."

the service in question was a covered benefit of the Medi-Cal program as to that beneficiary. We conclude that the Department is correct on both counts.

We begin our analysis with a short history of the Medi-Cal program. As we recounted in *California Medical Assn.* v. *Brian* (1973) 30 Cal.App.3d 637, 642 [106 Cal.Rptr. 555], "[i]n 1965, the Congress added Title XVIII to the Social Security Act and thereby created 'Medicare.' (42 U.S.C. § 1395 et seq.) In Title XIX, the Congress enacted the 'Medicaid' law. (42 U.S.C. § 1396 et seq.) 'Medi-Cal' is this state's program enacted pursuant to the federal law. In order to obtain federal funding which became available to the states under Title XIX, the Legislature enacted what is commonly known as the 'Medi-Cal Act.' (Welf. & Inst. Code, § 14000 et seq.)"

Title XIX of the Social Security Act authorizes the federal Secretary of Health and Human Services to make payments to states whose medical assistance plans meet the requirements of the federal statute. (42 U.S.C. § 1396; *Morris* v. *Williams* (1967) 67 Cal.2d 733, 738-739 [63 Cal.Rptr. 689, 433 P.2d 697].) The required contents of state plans for medical assistance are set forth in 42 United States Code section 1396a. Under that federal statute the plan must provide "such methods of administration . . . as are found by the Secretary to be necessary for the proper and efficient operation of the plan. . . ." (42 U.S.C. § 1396a(a)(4)(A).) One of those methods of administration found necessary and proper is contained in 42 Code of Federal Regulations, section 447.15 (1982): "A State plan must provide that the Medicaid agency must limit participation in the Medicaid program to providers who accept, as payment in full, the amounts paid by the agency." In compliance with this federal regulation, California adopted Welfare and Institutions Code, section 14019.3, which decrees that "Payment received from the state in accordance with Medi-Cal fee structures shall constitute payment in full." These restrictions are commonly known as the prohibition against "balance billing."

On the other hand, the federal statute also requires that the state plan contain provisions for reimbursement where a third party is legally liable to pay for the services rendered under the plan. It mandates that the state plan shall "provide (A) that the State or local agency administering such plan will take all reasonable measures to ascertain the legal liability of third parties to pay for care and services (available under the plan) arising out of injury, disease, or disability, (B) that where the State or local agency knows that a third party has such a legal liability such agency will treat such legal liability as a resource of the individual on whose behalf the care and services

are made available for purposes of paragraph (17)(B),[6] and (C) that in any case where such a legal liability is found to exist after medical assistance has been made available on behalf of the individual and where the amount of reimbursement the State can reasonably expect to recover exceeds the costs of such recovery, the State or local agency will seek reimbursement for such assistance to the extent of such legal liability." (42 U.S.C. § 1396a (a)(25).) In furtherance of that requirement, federal law also mandates that payments to the state by the federal government "shall be treated as an overpayment to the extent that the State . . . administering such plan has been reimbursed for such expenditures by a third party pursuant to the provisions of its plan in compliance with section 1396a (a)(25) of this title." (42 U.S.C. § 1396b (d)(2).)

Implementing federal regulations covering third party liability are found at 42 Code of Federal Regulations, section 433.135 et seq. (1982). They require that the state agency "must take reasonable measures to determine the legal liability of third parties to pay for services under the plan." (42 C.F.R. § 433.138 (1982).) Federal financial participation is not available in Medicaid payments if the state agency "received reimbursement from a liable third party" (42 C.F.R. 433.140(a)(2) (1982)). "Third party" is there defined as "any individual, entity or program that is or may be liable to pay all or part of the medical cost of injury, disease, or disability of an applicant or recipient." (42 C.F.R. § 433.136 (1982).) As explained in the Health Care Financing Administration Regional Office Manual implementing these regulations, "Section 1902(a)(25) of the [Social Security] Act [42 U.S.C. 1396a(a)(25)], and [42 C.F.R. 433.135], require that states take reasonable measures to identify legally liable third parties; treat verified third party liability as a resource of the Medicaid applicant or recipient, if payment from such source is currently available; and have procedures for securing reimbursement from liable third parties if payment from such source was not currently available, or the liability is determined after medical services have been paid for, or for any other reason a known liability was not treated as a resource. [¶] In order to carry out these requirements, the state agency needs administrative controls and procedures for identifying, investigating, and collecting from, third party resources. States are also required to report collections and to reimburse the federal government for its share of any collections made subsequent to claims for federal financial participation." (3 Medicare & Medicaid Guide (CCH) ¶ 14,749 (Dec. 1982).)

As can be seen, federal law treats the legal liability of third parties as a resource of the applicant for the purpose of determining eligibility for med-

---

[6]Paragraph (17)(B) requires that the plan "include reasonable standards . . . for determining eligibility for and the extent of medical assistance under the plan which . . . (B) provide for taking into account only such income and resources as are . . . available to the applicant or recipient. . . ."

ical assistance. Until that resource is exhausted, the applicant is not entitled to have Medi-Cal (and in turn Medicaid) pay for medical services. But by the nature of human affairs, it is not always administratively feasible to require this third party coverage to be utilized first because the applicants may be unsure if they have any coverage. Consequently the federal regulations accord the state agency these options for payment of claims: "(1) It may pay the amount remaining, under the agency's payment schedule, after the amount of the third party's liability has been established. Under this method, the agency may not withhold payment for services provided to a recipient if third party liability or the amount of liability cannot be currently established or is not currently available to pay the recipient's medical expense," or "(2) It may pay the full amount allowed under the agency's payment schedule for the claim and seek reimbursement from any liable third party to the limit of legal liability. . . ." (42 C.F.R. § 433.139, subd. (a).)

California has translated these federal statutes and regulations governing the legal liability of third parties into two distinct categories: "Other coverage" and third party liability or "casualty" recoveries. "Other coverage," as construed by the Department, is synonymous with the term "contractual or legal entitlement to health care services" used in Welfare and Institutions Code section 14019.4. This "other coverage" provision applies when an applicant, at the time of application for Medi-Cal, has another means of paying for or obtaining the same services rendered under Medi-Cal. Where the same service is otherwise available to an applicant, it is not covered by Medi-Cal. Indeed, the applicant's knowing failure to use or disclose this "other coverage" constitutes a crime. Welfare and Institutions Code section 14023 provides: "(a) Any applicant for public assistance or for coverage under this chapter *who at the time of application has any other contractual or legal entitlement to any health care service* defined in Section 14053, and who willfully fails at that time to disclose the fact of such other entitlement, or falsely represents that he does not have such other entitlement, is guilty of a misdemeanor. [¶] (b) [Requires disclosure of after-acquired other coverage.] [¶] (c) Any public assistance recipient or person eligible under this chapter who has *any other contractual or legal entitlement to any health care service* defined in Section 14053, and who knowing that he must use such entitlement first, *obtains any such service* under Medi-Cal without first having utilized and exhausted his other contractual or legal entitlement thereto or therefor, is guilty of a misdemeanor." (Italics added; see also Welf. & Inst. Code, § 10020.) As under federal law, state law allows Medi-Cal to pay a provider of medical services first and then recover its payment from "other coverage" sources. Section 14024 of the Welfare and Institutions Code provides in relevant part: "When health care services are provided to a person under this chapter who at the time the service is

provided has any other contractual or legal entitlement to such services, the director shall have the right to recover from the person, corporation, or partnership who owes such entitlement, the amount which would have been paid to the person entitled thereto, or to a third party in his behalf, or the value of the service actually provided, if the person entitled thereto was entitled to services. . . ." (See also Welf. & Inst. Code, § 10022.)

The procedures relating to utilization of other coverage are set forth in greater detail in the Administrative Code. Section 51005 of title 22, provides in relevant part: "Other Coverage. [¶] (a) Where beneficiaries eligible for benefits under this program are also eligible for the same benefits, either full or partial, under any other State or Federal medical care program or under other contractual or legal entitlement, including but not limited to a private group or indemnification insurance program, the Department shall require full utilization of benefits available through the other programs, when consistent with both quality of care and fiscal consideration. [¶] (b) A provider of services shall make reasonable effort to secure from the beneficiary information as to *any other coverage, including the name and address of the beneficiary, the insured and his employer or employee group plan or the name of the health insurance carrier providing the beneficiary's other coverage.* This information shall be submitted on a form, available from the Department, with the claim for services. The Director may waive this requirement as to a provider, a class of providers, or a classification of services for any of the following reasons: . . . [¶] (c) When the Department has paid for services and other coverage benefits are available as enumerated in subsection (a), the Department may recover payment for those services from the liable party. [¶] (d) *Whenever the Department receives payment for a health care service provided to a beneficiary which is in excess of both the amount which the Department has expended on behalf of the beneficiary for said service, and the administrative costs incurred in the collection of such payment, the excess shall be paid to the provider(s) of that service to the extent that the billing for said service exceeds the amount paid by the Medi-Cal Program. Any funds remaining shall be paid to the legally entitled person or entity.*" (Italics added.)

The exclusion of "other coverage" from the "balance billing" prohibition can be summarized as follows: When it is determined that the beneficiary had other coverage for medical care existing at the time the service was provided, and the Department has recovered more from the other source(s) than it paid the provider for the medical services plus the cost of collection of the other coverage, it must first pay the remainder to the provider up to the balance of the provider's full bill (not reduced by the Medi-Cal schedule) and then remit any remaining funds to the party legally entitled to it.

In California an entirely separate statutory framework exists for the collection of amounts owing as a result of what is called "Third Party Liability."[7] The statutes relating to third party liability or "casualty recoveries" are currently found at section 14124.70 et seq. of the Welfare and Institutions Code.[8] Under section 14124.71, subdivision (a), of that code, whenever benefits are provided under Medi-Cal because of "an injury for which another person is liable, or for which a carrier is liable in accordance with the provisions of any policy [containing uninsured motorist coverage]," the director is accorded an independent right to "institute and prosecute legal proceedings against the third person or carrier" for the recovery of the reasonable value of the benefits provided. Alternatively, the Director of Health Services may wait for the beneficiary to bring an action against the liable third party or carrier and then file a lien in that action. (Welf. & Inst. Code, § 14124.74.) As this case demonstrates, that is the usual practice. Lien recoveries are governed by Welfare and Institutions Code sections 14124.72 and 14124.74. Section 14124.72, subdivision (d), provides: "Where the action or claim is brought by the beneficiary alone and the beneficiary incurs a personal liability to pay attorney's fees and costs of litigation, the director's claim for reimbursement of the benefits provided to the beneficiary shall be limited to the amount of the medical expenditures for the benefit of the beneficiary less 25 percent which represents the director's reasonable share of attorney's fees paid by the beneficiary and that portion of the cost of litigation expenses determined by multiplying by the ratio of the full amount of the expenditures to the full amount of the judgment, award or settlement." Section 14124.78 further provides, however, that "in no event shall the director's claim exceed one-half of the beneficiary's recovery after deducting for attorney's fees, litigation costs, and medical expenses relating to the injury paid for by the beneficiary."

Finally, section 14124.71, subdivision (b)(2), gives the director discretion to "Waive any such claim, in whole or in part, for the convenience of the director, or if the director determines that collection would result in undue hardship upon the person who suffered the injury, or in a wrongful death action upon the heirs of the deceased."

The language of these sections indicates quite clearly that the "third party liability" provisions were designed to include reimbursement for Medi-Cal

---

[7]See heading to article 3.5 of chapter 7 of division 9, part 3, of the Welfare and Institutions Code, beginning with section 14124.70, entitled "Third Party Liability." Compare this with the use of the term "third parties" in the federal Medicaid Act (tit. XIX of the Social Security Act). Under federal law, "third parties" refer to *all* parties from whom collection for otherwise covered services is to be made. (See 42 U.S.C. § 1396a(a)(25), and 42 C.F.R. § 433.135 et seq., *supra.*) Federal usage of the phrase "third parties" consequently includes both what California calls "other coverage" and "third party liability," or "casualty recoveries," a term adopted by the Department.

[8]These sections replace former Welfare and Institutions Code section 14117 et seq.

payments out of personal injury recoveries. The Department uses the phrase "casualty recoveries," in its brief and in practice, to describe reimbursement under these sections so as to avoid confusion with the broader use of the term "third parties" in the federal statutes and regulations.

Having described the federal and state systems, we return to the contentions of the parties. The sole question before us is whether the phrase "third party payer who provides a contractual or legal entitlement to health care services," used in Welfare and Institutions Code section 14019.4, includes a third party tortfeasor who agrees by settlement to pay for medical services necessitated by his negligence.

Plaintiff argues these points: (1) This is not a "balance billing" case and therefore does not come within the federal "balance billing" prohibition; (2) California treats rights against third party tortfeasors the same as rights against other third parties who provide a contractual and legal entitlement; and (3) federal law governs.

Addressing the first and third arguments together, plaintiff is faced with Hobson's choice. Contrary to his assertion, this is a case which facially falls within the express prohibition of 42 Code of Federal Regulations section 447.15, a federal Medicaid regulation which states that participation in a state plan must be limited "to providers who accept, as payment in full, the amounts paid by the agency." "Provider," in this and every other context for the present discussion, includes a doctor rendering services under Medi-Cal. Here, plaintiff is seeking payment in full for the value of services he rendered as a physician to Ms. Kimble, that is, payment in excess of that provided by Medi-Cal. Plaintiff's only retort is that this is not an absolute prohibition, at least in California where Welfare and Institutions Code section 14019.4 allows a provider to receive additional payment in "third party payer" situations. Plaintiff has not refuted the "balance billing" prohibition as stated in federal law, but instead has fallen back onto the state statutory scheme which in fact appears to define in the Department's words, "an exclusion" from the federal rule.[9] Consequently, plaintiff's efforts to collect the remainder of his fee constitutes a prohibited balance billing unless Welfare and Institutions Code section 14019.4, subdivision (a), provides an exclusion for that prohibition and plaintiff's right of recovery comes within that statutory exclusion. If a tortfeasor is not a third party payer within the meaning of that section, it follows that the balance billing restrictions of both the federal law (42 C.F.R. § 447.15 (1982)) and California law (Welf. & Inst. Code, § 14019.3), bar plaintiff's recovery.

[9]The Department explains that California's exclusion to the "balance billing" prohibition is based upon the implicit principle that where Medicaid does not cover a service at all, it has no business regulating its cost.

Plaintiff's third argument asserts that federal law is contradicted by the distinction the Department is trying to make between legal entitlement and tort recoveries. Again, plaintiff is not arguing the supremacy of federal law, but only that because there is a mandated consistency requirement between federal and state Medicaid laws, the California enactments are consistent whether they in fact are or not. Specifically, plaintiff is arguing that because federal law does not distinguish between various types of third party liability, California law should not and does not. We are not convinced by this line of reasoning: The fact the federal and California laws should be consistent does not necessarily mean that they are. ■ The California law will be given its full meaning, even if that departs from federal statutes and regulations.[10]

■ We now turn to the substance of plaintiff's second argument, that California law treats rights against third party tortfeasors identically with other contractual or legal entitlement. As stated previously, we reject this argument.

Our decision is based, first, on our interpretation of the code sections relating to "other coverage," which in our view exclude personal injury recoveries, and, second, on the dual statutory scheme which treats as separate and distinct "other coverage" and "third party liability."

First, the language of Welfare and Institutions Code section 14019.4, subdivision (a), reveals a legislative intent to exclude personal injury recoveries. It describes a "third party payer who provides a contractual or legal entitlement to health care services." Although we agree that a third party tortfeasor might be described as a "third party payer," can that tortfeasor also be described as one who "provides" health care services? We think not. The term "who provides" qualifies and restricts "third party payer." "Provides," in this statutory context, denotes an existing and ongoing supplier of health care services, such as a health insurer. It does not describe a third party tortfeasor who provides nothing in the way of health care services, but of whom it can only be said may become liable to *compensate* an injured party for past and/or future medical expenses.[11] The tortfeasor is a payer, but not a provider.

---

[10]Plaintiff has not raised the issue of the conflict between 42 Code of Federal Regulations section 447.15, and California Welfare and Institutions Code section 14019.4. He is apparently content to have us rule on an interpretation of the later code section and understandably so, because a strict construction of the federal "balance billing" prohibition would defeat any claim that plaintiff is entitled to payment above that provided by Medi-Cal. Accordingly, we do not pass on the lurking preemption question.

[11]The Department points out that in some cases of ongoing medical need caused by a liable third party, the funds recovered may be put into a trust fund to be used for future medical care. Such a trust fund (not the recovery itself) may constitute a "legal entitlement to health care services" as to *future* services only. Such future services would then of course no longer be paid for by Medi-Cal.

The key phrase, "contractual or legal entitlement to health care services," in our view, also excludes a settlement of a tort claim. That phrase, a departmental expert testified, uses "words of art" and was not intended to cover the tort situation.[12] This interpretation of that phrase is supported by its use in related Medi-Cal statutes. Welfare and Institutions Code section 14023, subdivisions (a) and (c), as we have noted, require that an applicant first disclose "any other contractual or legal entitlement to any health care services" and then "use such entitlement" before obtaining any service under Medi-Cal, or be guilty of a misdemeanor. One thing is made quite clear by this section: The entitlement to which the statutes refer is one existing at the time of application for Medi-Cal services or at the time services are rendered, and not afterwards. It is highly unlikely that the Legislature intended that this entitlement include personal injury recoveries because medical services in nearly all cases are rendered before any settlement or recovery is made on a tort claim.

The use of the phrase in Welfare and Institutions Code section 14024 even more clearly excludes personal injury recoveries. That section provides, as we have also noted, that "When health care services are provided to a person under this chapter who at the time the service is provided has any other contractual or legal entitlement to such services, the director shall have the right to recover from the person, corporation, or partnership who owes such entitlement, *the amount which would have been paid to the person entitled thereto,* or to a third party in his behalf, or the value of the service actually provided, if the person entitled thereto was entitled to services." (Italics added.) The phrase "the amount which *would* have been paid" makes sense only if the section speaks to other insurance coverage or health care programs. It clearly does not describe a tort settlement recovery where there is no amount which could accurately be described as an amount which would have been paid at the time services were rendered. This statute unambiguously defines a preexisting entitlement.

---

[12]At trial Floyd J. Lasley, Jr., attorney and chief hearing officer for the Department of Health Services testified that the words "other contractual or legal entitlement" are "words of art:" " 'It's envisioned to mean the sources such as private health insurance, a trust fund that might be set up for some individual that was available to meet health care costs . . . [*sic*]' " Somewhat later in this testimony, Mr. Lasley explained further: ". . . there are two separate and distinct sources of third party recoveries that may be charged—that we may charge against to recover our Medi-Cal liens. [¶] First is the tort situation which is 14124.70. That is the legislation I helped draft and see through the Legislature. That's the one type. [¶] The other type is health insurance, trusts, as I mentioned before, coverage under an uninsured motorist policy where you pay your little extra to get that medical care, homeowner policies from other people, those are the ones that we look at as other coverage which is other contractual or legal entitlement. [¶] If you considered the tort recoveries and the Workers' Comp. recoveries as similar, as other coverage, then the statutory scheme doesn't work at all . . . ."

Finally, section 51005 of the California Administrative Code, title 22, setting forth a detailed procedure for utilization of other coverage sources, makes sense only if it refers to an existing entitlement, not a contingent liability based upon tortious conduct.

The second basis for rejecting plaintiff's contention is that the statutory scheme relating to "third party liability" is, as we have shown, separate and distinct from that relating to "other coverage." "Third party liability" or "casualty" provisions are contained in Welfare and Institutions Code section 14124.70 et seq. The important sections are recited above and provide for Department reimbursement of Medi-Cal expenditures in either of two ways: (1) by an independent lawsuit against a third party, including a third party tortfeasor, or (2) by filing a lien in an action instituted by a Medi-Cal beneficiary against a third party. Plaintiff does not dispute that these sections apply to the third party tortfeasor situation.

At the outset, we note that the enactment and subsequent 1976 amendment of present Welfare and Institutions Code section 14124.70 et seq., providing separate procedures for Medi-Cal reimbursement from liable third parties, reveals legislative intent that "third party liability" be treated differently from "other coverage" liability.

Procedures for third party liability reimbursement differs from "other coverage" reimbursement in the following ways. First, the Department may impose a lien in any judgment which might be rendered in favor of a beneficiary. (Welf. & Inst. Code, § 14124.74.) In contrast, there are no lien provisions under the "other coverage" sections.

Second, where an action is successfully brought by a beneficiary, the director's claim for reimbursement of benefits provided to the beneficiary is limited to the amount of the medical expenditures less 25 percent, to cover attorney's fees and costs incurred by the beneficiary. (Welf. & Inst. Code, § 14124.72, subd. (d).) There are no "beneficiary" cost protections in the "other coverage" provisions.

Moreover, in the "third party liability" context, the director cannot claim more than one-half of the beneficiary's recovery after deducting for beneficiary's litigation expenses. (Welf. & Inst. Code, § 14124.78.) There is no such limitation on reimbursement contained in the "other coverage" provisions. If a "third party liability" recovery were treated under the "other coverage" provisions, in particular California Administrative Code, title 22, section 51005, a beneficiary's judgment would not be protected. That regulation provides that Medi-Cal shall be fully reimbursed, including expenses for collection, with the provider getting the excess up to the full

value of services rendered. The beneficiary's judgment, under this system, could be reduced below the 50 percent level, absent statutory protection.

The final difference is that a claim against a liable third party may be waived if the director determines that the collection would result in undue hardship for the beneficiary. (Welf. & Inst. Code, § 14124.71, subd. (b)(2).) Under the "other coverage" provisions, the director does not have the option to waive reimbursement from "other coverage" sources.

Treatment of "third party liability" under section 14124.70 et seq. and "other coverage" under section 14000 et seq. is irreconcilable. We are not at liberty to read into the "other coverage" statutes protection for beneficiary judgments or settlements when it does not exist. The "other coverage" sections require that the Department seek *full* reimbursement plus administrative expense from "other coverage" sources. The "third party liability" provisions, in contrast, allow reimbursement but with limitation and offset: The Department is limited to reimbursement from one-half of beneficiary's recovery after deducting for beneficiary's expenses. Finally, the director may waive a claim if it would result in undue hardship upon the injured person.

Because the Department does not have the option of treating a third party recovery as "other coverage," we conclude that the provider also does not. Further, if the Legislature intended that tort recoveries be included in the "other coverage" provisions, then it had the opportunity to spell this out when it amended the third party liability sections in 1976. The amendments communicate no such message.

To summarize, there are marked differences in the treatment afforded "other coverage" and "third party liability" under Medi-Cal. "Other coverage" entails the situation where Medi-Cal was not liable in the first place to pay for medical expenses. Therefore, once reimbursed, Medi-Cal is not in a position to regulate the money left over after it has been reimbursed. The provider is entitled to the excess money up to his full fee based on the fact that if the "other coverage" had properly been identified and used in the first place, he would not have been receiving his fee under Medi-Cal.

Contrast this with the third party recovery situation in which Medi-Cal payments were proper in the first place, there then being no "other coverage." Medi-Cal gets reimbursed, as in the "other coverage" situation, with a deduction for beneficiary expenses, but the provider is limited to payment under the Medi-Cal schedule because payment was proper in the first place.

For the foregoing reasons we hold that a settling third party tortfeasor is not a "third party payer" as the term is used in Welfare and Institutions

Code section 14019.4 and that therefore a provider under Medi-Cal, such as plaintiff in this case, is not entitled to any money over and above his Medi-Cal fee.

The judgment is affirmed.

Puglia, P. J., concurred.

**EVANS, J.**—I dissent.

I perceive the majority opinion to be the result of periphrasis reasoning.

I view the question presented as simple, whether plaintiff, a doctor who has been partially reimbursed by Medi-Cal for services rendered a patient, may collect the balance of his bill from a personal injury settlement concluded between the patient and the tortfeasor who caused the patient's injuries, when that settlement includes funds for payment of the full bill and the patient directs payment be made.

For purposes of this dissent I restate the essential facts. Mary Kimble, eligible for coverage under the Medi-Cal program, was injured in an automobile accident. Plaintiff treated her and presented his bill for $3,739 both to Medi-Cal and to Kimble. Medi-Cal paid plaintiff $2,172, the amount authorized by its fee schedule. Kimble commenced a personal injury action against the other driver and gave plaintiff's bill for medical treatment to her attorney. When her suit settled, the damage recovery included $3,739 allocated for plaintiff's services. From this sum, Kimble's attorney gave plaintiff a check for $1,567, the balance of his billing not paid by Medi-Cal. The $2,172 paid plaintiff by Medi-Cal was subject to a lien asserted against Kimble's recovery, and was paid to Medi-Cal to the extent allowed by law.[1]

Plaintiff has not cashed the $1,567 check following a Medi-Cal warning that to do so would possibly expose him to suspension from the program and criminal liability. (See § 14123; 42 U.S.C. § 1396h (d).)

---

[1]Medi-Cal paid a total of $20,206 for services rendered Kimble, but filed a lien for only $18,424. The balance of $1,782 had been paid under several other (apparently unauthorized) Medi-Cal numbers, and was therefore overlooked when the lien was filed. However, none of the $1,782 which went unclaimed related to services performed by plaintiff.

Medi-Cal recovered $13,101 of its $18,424 lien; the remaining $5,323 Kimble was allowed to retain by statute. (Welf. & Inst. Code, § 14124.72, subd. (d).) If this 71 percent recovery under the lien is applied to the amount paid by Medi-Cal for plaintiff's services, it appears Medi-Cal recouped from Kimble $1,542 of the $2,172 it paid plaintiff.

Unless otherwise noted, all code references will be to the Welfare and Institutions Code.

## I

Under the factual and legal circumstances as I view them, plaintiff's recovery of the balance of his fee for medical treatment from the third party payer was not prohibited. Plaintiff initially collected only a portion of his medical bill from Medi-Cal. His patient later negotiated a personal injury settlement which specifically included an amount to pay his entire bill. Plaintiff received a check from the patient's attorney for the balance owing from this settlement, leaving the remainder of the special damage settlement available for Medi-Cal to recoup its payments to the extent allowed by law.

Defendant concedes plaintiff could properly collect his entire bill if the case involved not a personal injury settlement, but what is referred to as "other coverage" (health care coverage such as health insurance, a prepaid health plan membership, or Medicare). The statutory provision allowing collection in such a case is provided for in section 14019.4, subdivision (a). That section provides: "Any provider of health care services who obtains a label or copy from the Medi-Cal card or other proof of eligibility pursuant to this chapter shall not seek reimbursement nor attempt to obtain payment for the cost of such covered health care services from the eligible applicant or recipient, or any person other than the department *or third party payer who provides a contractual or legal entitlement to health care services.*" (Italics added.)[2]

Defendant construes the provisions in section 14019.4, subdivision (a), that a "third party payer who provides a contractual or legal entitlement to health care services" to mean only a supplier of "other coverage;" defendant asserts it does not include a third party tortfeasor. A number of reasons are advanced in an attempt to justify this peculiar distinction. Generally, the construction given a statute by the officials who administer it is ordinarily entitled to great weight. (*Morris* v. *Williams* (1967) 67 Cal.2d 733, 748 [63 Cal.Rptr. 689, 433 P.2d 697].) However, in this instance, I view the distinction as indefensible. I would conclude that from the proceeds of a settlement with a third party tortfeasor, plaintiff may be compensated for the

---

[2]The statute is echoed in California Administrative Code, title 22, section 51002, which provides in part: "(a) A provider of service under the Medi-Cal program shall not submit claims to or demand or otherwise collect reimbursement from a Medi-Cal beneficiary, or from other persons on behalf of the beneficiary, for any service included in the Medi-Cal program's scope of benefits in addition to a claim submitted to the Medi-Cal program for that service, except to: [¶] (1) *Collect payments due under a contractual or legal entitlement* pursuant to Section 14000(b) of the Welfare and Institutions Code. . . ." (Italics added; see also Cal. Admin. Code, tit. 22, § 51471.)

Section 14000, subdivision (b), provides: "The benefits available under this chapter shall not duplicate those provided under other federal or state laws or under other contractual or legal entitlements of the person or persons receiving them."

balance of his bill under the "third party payer" provisions of section 14019.4.

Defendant argues the distinction is required by federal law. I perceive the contrary to be true.

The Medi-Cal program provides funds for health care and related services to indigent persons. (§ 14000.) It receives funding from the federal government under the Medicaid program, which requires that Medi-Cal follow Medicaid requirements or suffer the loss of the federal funds. (42 U.S.C. §§ 1396, 1396a; see generally *Morris* v. *Williams, supra,* 67 Cal.2d 733; Comment, *Third Party Liability and the Medi-Cal Program: Administratively Inconsistent, Judicially Inequitable* (1982) 13 Pacific L.J. 1067, 1069-1070.) Defendant contends the federal prohibition lies in 42 Code of Federal Regulation section 447.15, which states: "A State plan must provide that the Medicaid agency must limit participation in the Medicaid program to providers who accept, *as payment in full,* the amounts paid by the agency." (Italics added; see also 42 U.S.C. § 1396h (d); § 14019.3; Cal. Admin. Code, tit. 22, § 51002, subd. (a).)

However, defendant concedes section 14019.4 does not run afoul of that federal regulation in circumstances when a "third party payer" makes payment available for the patient. An "exclusion" from the federal regulation is established since the Medi-Cal program does not actually come into play. Medi-Cal benefits are not payable to a patient with any other "contractual or legal entitlement" (§ 14000, subd. (b)); since the program is not involved, the medical provider may seek payment of the full fee. As defendant points out, this "exclusion" applies even if the provider has billed both Medi-Cal and the patient, and initially collected from the former.[3] This is made possible by section 14024 which authorizes Medi-Cal to recoup all it paid for services, placing Medi-Cal in the position of noninvolvement.[4]

---

[3]Although Medi-Cal is supposed to be the provider's last resort for payment, defendant's brief states, "The Medi-Cal program has recognized that it is not always administratively feasible to require other coverage to be utilized first, particularly where beneficiaries are unsure of any coverage they may have. . . ." Thus, "the providers rendering services to the beneficiary will generally bill the Medi-Cal program because it ensures fast and reliable payment at a time when other sources are as yet indefinite."

[4]Section 14024 provides in part: "When health care services are provided to a person under this chapter who at the time the service is provided has any other contractual or legal entitlement to such services, the director shall have the right to recover from the person, corporation, or partnership who owes such entitlement, the amount which would have been paid to the person entitled thereto, or to a third party in his behalf, or the value of the service actually provided, if the person entitled thereto was entitled to services. . . ."

California Administrative Code, title 22, section 51005, subdivision (c), repeats this authorization; subdivision (d) goes on to provide that when Medi-Cal recoups an amount in excess of both its payments made and its cost of collection, the excess shall go to the

Defendant's attempt to exclude a tort recovery from the concept of "other coverage" is asserted on the basis of the statutory scheme governing Medi-Cal's reimbursement from third party tortfeasors (which defendant refers to as "casualty" collections).

Those provisions (§ 14124.70 et seq.) authorize Medi-Cal to independently institute and prosecute legal proceedings against the tortfeasor, and attempt to recover all it paid on behalf of the beneficiary (less, of course, its costs of recovery). (§ 14124.71.) Or, Medi-Cal may file a lien on the beneficiary's claim against the tortfeasor, in which case its reimbursement must be reduced by 25 percent of the lien (this represents Medi-Cal's reasonable share of attorney fees paid by the beneficiary) and by a pro rata share of the beneficiary's litigation expenses (§§ 14124.72, subd. (d); 14124.74). The statutes preclude the reimbursement under the lien from exceeding one-half the beneficiary's recovery after deducting attorney fees, litigation costs, and medical expenses paid by the beneficiary (§ 14124.78). Medi-Cal may waive reimbursement in whole or in part if collection would result in undue hardship on the beneficiary (§ 14124.71, subd. (b)(2)).

Defendant argues that because Medi-Cal typically resorts to the lien procedure—and as a result rarely receives full reimbursement—there is no basis for an "exclusion" since under the lien procedure at least some of the Medi-Cal funds expended are not recouped, and the program is implicated. The argument totally ignores the fact that Medi-Cal *is* expressly authorized to pursue *full* reimbursement in a tort situation. (§ 14124.71.) Since there is a potential for full reimbursement, an "exclusion" does exist just as much in the tort context as in the "other coverage" context. Under the circumstances, 42 Code of Federal Regulations section 447.15 is not impinged.[5]

In fact, far from compelling a distinction between tortfeasors and suppliers of "other coverage," federal regulations militate against it. Section 433.136(3) of 42 Code of Federal Regulations, dealing with third party

---

provider to the extent the provider's bill exceeded what Medi-Cal paid him: "(c) When the Department has paid for services and other coverage benefits are available as enumerated in subsection (a), the Department may recover payment for those services from the liable party. [¶] (d) Whenever the Department receives payment for a health care service provided to a beneficiary which is in excess of both the amount which the Department has expended on behalf of the beneficiary for said service, and the administrative costs incurred in the collection of such payment, the excess shall be paid to the provider(s) of that service to the extent that the billing for said service exceeds the amount paid by the Medi-Cal Program. Any funds remaining shall be paid to the legally entitled person or entity."

[5]The "exclusion" in the tort context does not depend on Medi-Cal's actually seeking full reimbursement. The "exclusion" in the "other coverage" context obtains even though Medi-Cal may forego full reimbursement under section 14024—for example, when the anticipated cost of recovery exceeds the recovery itself. (See 42 U.S.C. § 1396a (a)(25).) I think the same is true in the tort context.

recovery, provides in part: " 'Third party' means any individual, entity or program that is or may be liable to pay all or part of the medical cost of injury, disease, or disability of an applicant or recipient." As it is noted in volume 3 of the Medicare and Medicaid Guide (Commerce Clearing House, Inc. 1982), the federal government considers all third parties alike for purposes of reimbursement. (¶ 14,749, pp. 6429-6430.)

## II

Next, defendant contends a "third party payer" cannot include a third party tortfeasor under section 14019.4, asserting such an interpretation is contrary to the provisions of the section and to the statutory scheme.

Defendant first argues the phrase itself—"third party payer who provides a contractual or legal entitlement to health care services"—does not describe a third party tortfeasor, but rather contemplates a right to "health care services" (see § 14053), not to money damages. The argument goes on that the entitlement must exist "at the time the service is provided" (§ 14024, see also § 14023, subd. (c)) before resorting to Medi-Cal if the patient's obligation to use the entitlement is to have any meaning.

The argument merely isolates a distinction without a difference. It is not important that a tortfeasor pays money damages rather than furnishing health care services. This is borne out by evidence that Medi-Cal treats an uninsured motorist insurance policy as a "contractual or legal entitlement to health care services," even though such a policy provides an indemnity indistinguishable from a tortfeasor's liability insurance. (See *California State Auto. Assn. Inter-Ins. Bureau* v. *Jackson* (1973) 9 Cal.3d 859, 866-868 [109 Cal.Rptr. 297, 512 P.2d 1201].) Medi-Cal treats health insurance in the same manner, even though a health insurer does not provide services, but pays indemnity.

It is equally unnecessary that the "entitlement" referred to in section 14019.4 exist at the time the services are rendered.

Defendant claims a preexisting entitlement is necessary to effectuate section 14023, subdivision (c).[6] I believe that section is unnecessary and extraneous to a proper consideration of the question presented, as it is penal in nature, obviously designed to prevent abuse of the Medi-Cal system by

---

[6]That subdivision states: "Any public assistance recipient or person eligible under this chapter who has any other contractual or legal entitlement to any health care service defined in Section 14053, and who knowing that he must use such entitlement first, obtains any such service under Medi-Cal without first having utilized and exhausted his other contractual or legal entitlement thereto or therefor, is guilty of a misdemeanor."

those who have available a coexisting present entitlement. By its terms, it does not preclude one from access to Medi-Cal assistance who may later be entitled to recoup cost of medical care from a third party responsible for the injury to the beneficiary. Moreover, the argument is contradictory; in fact that contradiction is made self-evident by defendant's concession concerning its ability to proceed against such a recovery to recoup its expenditures pursuant to section 14024.

Defendant also argues that the two distinct procedures the Welfare and Institutions Code establishes for Medi-Cal to follow in seeking reimbursement—section 14024 for "other coverage" collection and section 14124.70 et seq. for "casualty" collection—will be rendered confusing or meaningless if section 14019.4 is interpreted to include a third party tortfeasor. The argument is that if a tort recovery equates with a "contractual or legal entitlement," then the procedures in section 14124.70 et seq. become mere surplusage; that Medi-Cal will always seek reimbursement under section 14024, to avoid the limitations on its recovery imposed under section 14124.70 et seq.

This is an obvious attempt to bootstrap the result desired by defendant and achieved by the majority. In my view the argument becomes self-defeating upon examination of sections 14124.70, 14124.71, 14124.72, 14124.73, 14124.74, 14124.75, 14124.76, 14124.77, 14124.78, and 14124.79. Those sections provide authority for the director to seek reimbursement of medical expenditures made on behalf of a beneficiary from a third party tortfeasor and detail in unambiguous language the various recovery options which may be pursued by the director. The self-serving nature of the assertion is made quite evident by the provisions of section 14124.71 and those following. Those provisions, among others, provide that "When benefits are provided . . . to a beneficiary under this chapter because of an injury for which another person is liable, or for which a carrier is liable in accordance with the provisions of any policy of insurance . . . the director shall have a right to recover from such person or carrier the reasonable value of benefits so provided." (§ 14124.71.) Present entitlement to a personal injury recovery is not a prerequisite or required as a prerequisite to entitle a beneficiary to Medi-Cal aid. As I see the argument, it flies in the face of clear statutory authority. To interpret the various sections, as defendant and the majority opinion has, establishes an untenable distinction of less than doubtful legitimacy.

### III

In the factual context of the case which involves a settlement concluded with a tortfeasor providing for reimbursement of medical expense and a

desire by a patient that her physician be paid, I have examined and would reject all the arguments suggested in support of a distinction between such a personal injury settlement and "other coverage." I would conclude that the distinction sought does not exist. I do not find it to be compelled by federal regulation; indeed under the federal regulations, there is no distinction. It is not compelled by the state statutory scheme; on the contrary, the statutes properly interpreted provide a sound result and avoid the fundamental unfairness of the interpretation defendant and the majority opinion seem to justify. Whether the source of a patient's "entitlement" is a tort recovery or health care coverage, the fact is the funds for the provider's full recovery were recovered and payment does not tax or burden the beneficiary.

Defendant voices a worry that not in every case will satisfaction of the provider's bill be so painless, and conjures up visions of providers plundering the tort recoveries much needed by the indigent tort victims. I would conclude that when a tort recovery provides—like a source of health care coverage—funds specifically to pay for medical services, the provider may collect the balance due for services from the funds recovered as a damage award from the third party causing the injury.

I would reverse the judgment.

A petition for a rehearing was denied January 10, 1984. Evans, J., was of the opinion that the petition should be granted. Appellant's petition for a hearing by the Supreme Court was denied February 29, 1984. Mosk, J., was of the opinion that the petition should be granted.