RICHARD L. HAMILTON, Corporation Counsel Outagamie County
You inquire as to the legality of a proposed contract pursuant to which your county would obligate itself to pay a visiting nurse association funds in addition to those received by such a home health care provider through the Medical Assistance ("Medicaid") or Medicare programs.
I am of the opinion that such contractual payments may not be made in a manner consistent with federal and state Medicaid statutes and regulations prohibiting supplementation. I decline to analyze the applicability of the pertinent Medicare statutes and regulations, since the Medicare program is administered by federal, not state, officials.
Your opinion request describes the fact situation which gives rise to your inquiry as follows:
 The Visiting Nurse Association provides home health care services to residents of the City of Appleton and, in the past has received funds from the United Way and also some payment from the County to supplement the difference between what Medical Assistance or Medicare has paid for a particular care recipient and the normal VNA rate for such care. Due to a severe reduction in United Way funding the Visiting Nurse Association is now requesting greater funding from the County, hence the reason for this inquiry.
You have also verbally indicated that the county is considering entering into a contract with the VNA, pursuant to which the county would reimburse the VNA the difference between the Medicaid or Medicare rates and the VNA's actual cost of providing the *Page 288 
service to the Medicaid or Medicare recipient. In addition, you indicate that none of these Medicaid or Medicare patients are 51.42 or 51.437 board clients or county general relief recipients, and that the county is not under any other statutory or legal obligation to provide for their care.[1] Finally, you indicate that the VNA has not decided whether it will discontinue or refuse to provide services to Medicaid or Medicare patients if the county decides not to enter into the proposed contract.
Section 59.07(39), Stats., explicitly authorizes a county board to "[a]ppropriate money toward the support of organized and bona fide nursing associations in the county, such associations to have at least one qualified nurse." However, it is my understanding that your county desires to ascertain whether funds appropriated pursuant to that statute would both be expended and received in a manner consistent with federal and state laws and regulations.
Medicaid is a cooperative federal-state program created under Title XIX of the Social Security Act. Harris v. McRae, 448 U.S. 297,308-09 (1978). Although the federal and state governments share the costs of this program, the primary responsibility for its administration lies with a designated single state agency in each state. 42 U.S.C. §§ 1396a(a)(5) and 1396b (1987). In Wisconsin, the Department of Health and Social Services is that agency. The federal and state Medicaid statutes and regulations relevant to your request are found in42 U.S.C. § 1320a-7b(d)(1) (1987), 42 C.F.R. § 447.15 (1987) and Wisconsin Administrative Code section HSS 106.04(3).
42 U.S.C. § 1320a-7b(d) (1987) provides in pertinent part as follows:
Illegal patient admittance and retention practices
Whoever knowingly and willfully —
 (1) charges, for any service provided to a patient under a State plan approved under subchapter XVIII of this chapter, money or other consideration at a rate in excess of the rates established by the State . . . *Page 289 
. . . .
 shall be guilty of a felony and upon conviction thereof shall be fined not more than $25,000 or imprisoned for not more than five years, or both.
Under 42 C.F.R. § 447.15 (1987), "[a] State plan must provide that the Medicaid agency must limit participation in the Medicaid program to providers who accept, as payment in full, the amounts paid by the agency plus any deductible, coinsurance or copayment required by the plan to be paid by the individual." This regulation prohibits "supplementation" of the Medicaid rates established by the states. See Dunlap Care Center v. Iowa Dept.of S.S., 353 N.W.2d 389, 394 (Iowa 1984).
Pursuant to the "broad discretion" which it possesses concerning the administration of the Medicaid program, seeSwanson v. Health Social Services Dept., 105 Wis.2d 78, 86,312 N.W.2d 833 (Ct.App. 1981), the Wisconsin Department of Health and Social Services has promulgated Wisconsin Administrative Code section HSS 106.04(3), which provides in pertinent part as follows:
 A provider shall accept payments made by the department in accordance with sub. (1) as payment in full for services provided a recipient. A provider may not attempt to impose an unauthorized charge or receive payment from a recipient, relative or other person for services provided, or impose direct charges upon a recipient in lieu of obtaining payment under the program, except under any of the following conditions:
 (a) A service desired, needed or requested by a recipient is not covered under the program or a prior authorization request is denied and the recipient is advised of this fact before receiving the service.
(Emphasis added.) It is my understanding that this administrative code provision is incorporated by reference in the State Plan submitted by the department to the United States Department of Health and Human Services ("HHS").
Home health care providers are certified by HHS for Medicare purposes and are also certified by the department to participate in the Medicaid program. See 42 C.F.R. § 448.70(d) (1987) and Wis. Admin. Code § HSS 105.16. Like other Medicaid providers, they are required to sign provider agreements with the department which *Page 290 
obligate them to comply with all applicable provisions of federal and state law.
At least one other state, California, has enacted provisions similar to those contained in Wisconsin Administrative Code section HSS 106.04(3). See Palumbo v. Myers,149 Cal. App. 3d 1020, 197 Cal. Rptr. 214, 217 (1983). The California Court of Appeals has twice construed those California provisions as precluding "balance-billing" for the difference between the provider's usual and customary charge and the rate of payment established under the state's Medicaid program. Palumbo,197 Cal. Rptr. at 221-22; Serafini v. Blake, 167 Cal. App. 3d Supp. 11, 213 Cal. Rptr. 207, 209-11 (1985).
The fact situation you describe is similar to those in Palumbo
and Serafini in that the contemplated contract would legally obligate the county to pay a sum in excess of the amount authorized under state law for the care of Medicaid patients. If the contract were adopted, it would enable the VNA to "impose an unauthorized charge or receive payment from . . . [an]other person for services provided," contrary to the provisions of Wisconsin Administrative Code section HSS 106.04(3). Since that provision is incorporated in the State Plan and forms a part of the assurance submitted by the department to HHS pursuant to42 C.F.R. § 447.15 (1987), the proposed contract would also violate the provisions of 42 U.S.C. § 1320a-7b(d)(1) (1987). I therefore conclude that the receipt of any funds by VNA pursuant to the proposed contract would be impermissible under both federal and state statutes and regulations prohibiting supplementation of Medicaid rates.
It should be emphasized that my conclusion is a narrow one which results from the legal obligations arising from the proposed contract. If the county desires to provide financial assistance to defray the cost of home health care, it may wish to consider making a purely gratuitous appropriation to the VNA as an entity pursuant to section 59.07(39), as opposed to creating a legal obligation to supplement the amounts paid by the department or otherwise earmarking funds for the care of Medicaid recipients.
As to Medicare, with exceptions not pertinent to your inquiry, Title XVIII of the Social Security Act is administered exclusively by HHS. Consequently, there are no state statutes or regulations applicable to the Medicare portion of the proposed contract. In 77 *Page 291 
Op. Att'y Gen. 214 n. 1 (1988), I indicated that "it would be inappropriate for me to construe federal statutes enforced exclusively by federal agencies . . . ." Although not stated in that opinion my rationale is the same as that I have given for refusing to construe municipal ordinances:
 Although the meaning of a county ordinance presents a question of law rather than a question of fact, the facts and documents necessary to ascertain the meaning of any municipal ordinance are or should be readily available to that municipality's attorney. And, as a public officer, it is the function of the municipal attorney to provide legal advice concerning the meaning of the ordinances enacted by that municipality.
77 OP. Att'y Gen. 120, 123 (1988).
Federal statutes and regulations concerning limitations on charges by Medicare providers are complex and have been changed frequently. See Medicare Medicaid Guide [CCH] ¶¶ 3185-3400 (1987).[2] Just as the applicability of municipal ordinances should be determined by public officers who are municipal attorneys, the applicability of federal statutes administered exclusively by the United States government should be determined by public officers who are federal attorneys. It would be inappropriate for me to speculate as to how counsel employed by HHS will construe Medicare statutes and regulations, especially when such counsel can be contacted directly at HHS' regional office in Chicago or at the Office of the General Counsel in Baltimore.
For the policy reasons expressed in 77 Op. Att'y Gen. 214 n. 1 and in 77 Op. Att'y Gen. 123, I decline to offer any opinion concerning the applicability of federal Medicare statutes and regulations to the fact situation presented in your inquiry. I therefore express no opinion as to whether a county may contract to supplement the funds paid by HHS for the care of Medicare recipients. I am also taking this opportunity to formally advise state and local officials that, except in extraordinary circumstances,[3] the attorney general will not issue opinions concerning the applicability of federal *Page 292 
statutes and regulations administered exclusively by federal authorities.
For the reasons indicated, I therefore conclude only that a county may not, in a manner consistent with federal and state statutes and regulations prohibiting supplementation, contractually obligate itself to pay a visiting nurse association funds in addition to those received by such a home health care provider through the Medicaid program.
DJH:FTC
[1] Your fact situation is therefore distinguishable from that examined in 73 Op. Att'y Gen. 68, 71 (1984). There, the counties desiring to make supplemental payments were not unrelated to the Medicaid patients in question. They had a legal obligation to provide for their care.
[2] For a description of the difference between the Medicare and Medicaid programs see generally Samuel v. California Dept. ofHealth Services, 570 F. Supp. 566 (N.D. Cal. 1983).
[3] It would be particularly inappropriate for me to determine that such extraordinary circumstances exist when I have received no tentative opinion examining the applicability of such federal statutes and regulations. See 62 Op. Att'y Gen. Preface (1973). *Page 293