TIM A. DUKET, District Attorney Marinette County
You indicate that hospitals in Menominee, Michigan, and Marinette, Wisconsin, have recently been consolidated and that all hospital activities are now being conducted in Marinette. You also indicate that as a result of this consolidation, some individuals in need of emergency medical treatment are now brought from Menominee County, Michigan, to the emergency room in Marinette. Pursuant to section 51.15(1), Stats., law enforcement officers in Marinette County now routinely transport any such individuals who apparently are appropriate subjects for commitment to Brown County Mental Health Center in Green Bay, Wisconsin. If deemed appropriate by health care professionals affiliated with that facility, involuntary commitment procedures are then pursued under section 51.20, and all costs of detention and commitment are then absorbed by Marinette County.
You ask two questions because of your concern about the absorption of these costs by Marinette County. Your first question may be stated as follows: Instead of transporting *Page 60 
individuals who have been conveyed to the emergency room from Menominee County, Michigan, and who are apparently in need of commitment to an approved treatment facility such as the Brown County Mental Health Center, may law enforcement officials from Marinette County, Wisconsin, transport such individuals back across state lines and then turn them over to Michigan authorities so that they can utilize Michigan's mental health care system?
In my opinion, it would be inadvisable to treat individuals transported across state lines for emergency medical care differently than other individuals when determining whether emergency detention proceedings should be initiated pursuant to section 51.15.
Although your description of this fact situation is very limited, my understanding is that the individuals you describe are not under any form of custody or detention in either Michigan or Wisconsin until such time as emergency detention proceedings are initiated by law enforcement officials in Marinette County pursuant to section 51.15.
Once emergency detention proceedings are initiated, the individual must be transported to an approved treatment facility pursuant to section 51.15(2). If emergency detention proceedings are not initiated, law enforcement officers in both Wisconsin and Michigan lack any basis for detaining such individuals against their will. If an individual has not been detained under section51.15(2), that individual may be transported by a law enforcement officer to the border or across state lines, so long as the individual's consent is not withdrawn. But potential liability problems might arise from a refusal to initiate emergency detention proceedings solely in order to use this option.
I am aware that, in Wisconsin, "[t]here is general personal tort immunity for a public official acting within the scope of his official authority and in the line of his official duties."Cords v. Anderson, 80 Wis.2d 525, 539, 259 N.W.2d 672 (1977). Certainly, any law enforcement official has broad discretion to *Page 61 
determine whether emergency detention proceedings should be initiated. However, as I understand your inquiry, for purely financial reasons, certain law enforcement officials in Marinette County propose to transport some individuals across state lines who would otherwise be detained pursuant to section 51.15 solely because those individuals were originally transported across state lines by law enforcement authorities from Menominee County, Michigan.
With respect to private physicians, the Wisconsin Supreme Court has held that where it is "foreseeable to a psychiatrist, exercising due care, that by failing to warn a third person or by failing to take action to institute detention or commitment proceedings someone would be harmed, negligence will be established." Schuster v. Altenberg, 144 Wis.2d 223, 240,424 N.W.2d 159 (1988). While public officials such as law enforcement officers enjoy broader immunity than private physicians, in light of the court's decision in Schuster, a law enforcement officer could conceivably be held liable for failure to commence emergency detention proceedings pursuant to section 51.15. Caution is particularly warranted in the situation presented by your inquiry, since the Michigan courts, when employing a conflict of laws analysis, are not obligated to accord the same degree of immunity to Wisconsin public officials that they enjoy when suit is brought against them in Wisconsin courts. Given these considerations, there is at least some potential risk of liability if individuals transported from Menominee County, Michigan, are treated differently than other individuals when deciding whether emergency detention proceedings should be initiated pursuant to section 51.15.
Your second question may be stated as follows: May Marinette and/or Brown County enter into an intercounty agreement with Menominee County, Michigan, under section 51.15(7) for the care or treatment of such individuals?
In my opinion, the counties may not enter into such an agreement under section 51.15(7). However, sections 51.75(11), *Page 62 51.87(3) and 66.30(5) each contain a legal mechanism through which financial or other responsibility for the care and treatment of such individuals may be transferred or shared under certain specified circumstances.
Section 51.15(7) provides as follows:
 INTERCOUNTY AGREEMENTS. Counties may enter into contracts whereby one county agrees to conduct commitment hearings for individuals who are detained in that county but who are taken into custody under this section in another county. Such contracts shall include provisions for reimbursement to the county of detention for all reasonable direct and auxiliary costs of commitment proceedings conducted under this section and s. 51.20 by the county of detention concerning individuals taken into custody in the other county and shall include provisions to cover the cost of any voluntary or involuntary services provided under this chapter to the subject individual as a result of proceedings or conditional suspension of proceedings resulting from the notification of detention.
The first sentence of section 51.15(7) limits its applicability to individuals "who are taken into custody under this section in another county." The procedure referred to in the italicized language is that contained in section 51.15(1)-(6). Menominee County, Michigan, law enforcement officials have no authority to initiate section 51.15 proceedings when transporting individuals to an emergency room in Wisconsin as a result of events occurring in Michigan.
In addition, under the fact situation presented by your inquiry, emergency detention proceedings are initiated in Marinette County by law enforcement officials from Marinette County. Therefore, while Marinette County may enter into an agreement with Brown County pursuant to section 51.15(7) for the care and treatment of individuals transported by law enforcement officials from Marinette County to the Brown County Mental Health Center, Menominee County, Michigan, is not a proper party to *Page 63 
any agreement entered into solely under the provisions of section51.15(7). Since emergency detention proceedings under section51.15 may only be initiated in Wisconsin counties, section51.15(7) has no application to counties outside Wisconsin.
One statute which addresses an aspect of the problem posed by your inquiry is section 51.75, which provides in part as follows:
The contracting states solemnly agree that:
 (1) ARTICLE I. . . . [T]he party states find that the necessity of and desirability for furnishing such care and treatment bears no primary relation to the residence or citizenship of the patient but that, on the contrary, the controlling factors of community safety and humanitarianism require that facilities and services be made available for all who are in need of them . . . .
. . . .
 (3) ARTICLE III. (a) Whenever a person physically present in any party state is in need of institutionalization by reason of mental illness or mental deficiency, he shall be eligible for care and treatment in an institution in that state irrespective of his residence, settlement or citizenship, qualifications.
. . . .
 (7) ARTICLE VII. (d) Nothing in this compact shall be construed to prevent any party state or subdivision thereof from asserting any right against any person in regard to costs for which such party state or subdivision thereof may be responsible pursuant to any provision of this compact.
. . . .
 (11) ARTICLE XI. The duly constituted administrative authorities of any 2 or more party states may enter into supplementary agreements for the provision of any service or facility or for the maintenance of any institution on a joint or cooperative basis whenever the states concerned find that such agreements will improve services, facilities or *Page 64 
institutional care and treatment in the fields of mental illness or mental deficiency. No such supplementary agreement shall be construed so as to relieve any party state of any obligation which it otherwise would have under other provisions of this compact.
In addition, section 51.76 provides as follows:
 Pursuant to the interstate compact on mental health, the secretary [of the Wisconsin Department of Health and Social Services] shall be the compact administrator and, acting jointly with like officers of other party states, may promulgate rules to carry out more effectively the terms of the compact. The compact administrator shall cooperate with all departments, agencies and officers of and in the government of this state and its subdivisions in facilitating the proper administration of the compact or any supplementary agreement entered into by this state thereunder.
Detailed provisions for the transfer of patients from Wisconsin to other states are contained in section 51.77.
Michigan is a signatory to the Interstate Compact on Mental Health. See Mich. Comp. Laws §§ 330.1920—330.1930. Read together, sections 51.75(11) and 51.76 permit the secretary of the Wisconsin Department of Health and Social Services ("department") to contract with Michigan's compact administrator for reimbursement for the cost of care and treatment provided to individuals transported from Michigan to the State of Wisconsin. If the appropriate officials from the respective states are willing to enter into such a supplementary agreement pursuant to section 51.75(11), the department could then reimburse any affected Wisconsin counties for the cost of care and treatment which they incur in treating individuals transported to Wisconsin by Michigan law enforcement authorities.
Another statute which could be applied to the problem presented by your inquiry is section 51.87. This statute applies to *Page 65 
both involuntary commitments and voluntary placements of residents from one state to another. Sec. 51.87(8) and (10), Stats. However, the limitation contained in the last sentence of section 51.87(9) is critical. Absent the enactment of an appropriate statute by the state of Michigan recognizing the validity of applicable Wisconsin commitment laws, the provisions of section 51.87 may not be utilized. Since your inquiry contains no information as to whether Michigan has enacted such a law, it would be inappropriate for me to determine at this time whether section 51.87 could be utilized to alleviate some of the problems you describe.
A statutory option for obtaining financial reimbursement by means of a contract between the counties involved is contained in section 66.30(5), which provides as follows:*
 Any municipality may contract with municipalities of another state for the receipt or furnishing of services or the joint exercise of any power or duty required or authorized by statute to the extent that laws of such other state or of the United States permit such joint exercise.
 (a) Every agreement made under this subsection shall, prior to and as a condition precedent to taking effect, be submitted to the attorney general who shall determine whether the agreement is in proper form and compatible with the laws of this state.
Under section 66.30(1), the term "municipality" includes counties. When a cooperative agreement is entered into pursuant *Page 66 
to section 66.30(5), section 66.30(2) provides that, "each [municipality] may act under the contract to the extent of its lawful powers and duties."
You do not indicate whether, under Michigan law, Menominee County, Michigan, has the authority to fund the cost of treatment for any or all individuals transported to Marinette County for emergency medical care. However, to the extent that such authority exists, Marinette County may contract with Menominee County pursuant to section 66.30(5) for reimbursement for the cost of care and treatment of those individuals for whom Marinette County has been assuming financial responsibility.
For the reasons indicated, I therefore conclude that it would be inadvisable to treat individuals transported across state lines for emergency medical care differently than other individuals when determining whether emergency detention proceedings should be initiated pursuant to section 51.15. I further conclude that, while section 51.15(7) does not authorize contractual agreements with counties outside of Wisconsin, sections 51.75(11), 51.87(3) and 66.30(5) each contain a legal mechanism through which financial or other responsibility for the care and treatment of individuals from such counties may be transferred or shared under certain specified circumstances.
DJH:FTC
* No contract under section 66.30 may contravene any of the specific provisions of section 51.87. See, e.g., Employees Local1901 v. Brown County, 146 Wis.2d 728, 735, 432 N.W.2d 571
(1988). It may be, however, that section 66.30 affords at least some reimbursement options which are not foreclosed by section51.87. Since "I have received no tentative opinion examining the applicability of such . . . statut[e]," see 77 Op. Att'y Gen. 287, 291 n. 3 (1988), the precise application of section 66.30(5) to your fact situation cannot be ascertained in this opinion. See
62 Op. Att'y Gen. Preface (1973). *Page 67